1  EDWARD H. KUBO, JR. (#2499)
   United States Attorney
2  District of Hawaii
   R. MICHAEL BURKE (#1902)
3  Assistant U.S. Attorney
   Room 6-100, PJKK Federal Building
4  300 Ala Moana Blvd.
   Honolulu, Hawaii 96850-6100
5  Telephone: (808) 541-2850
   Facsimile: (808) 541-3752
6
   PETER D. KEISLER
7  Assistant Attorney General
   Civil Division
8  C. FREDERICK BECKNER, III
   Deputy Assistant Attorney General
9  J. PATRICK GLYNN
   Director, Environmental Torts
10 DAVID S. FISHBACK
   Asst. Dir., Environmental Torts
11 STEVEN M. TALSON
   Senior Trial Counsel, Envir. Torts
12 TIMOTHY B. WALTHALL
   Trial Attorney, Environmental Torts
13 U.S. Department of Justice
   P.O. Box 340
14 Washington, D.C. 20044
   Telephone: (202) 616-4229
15 Facsimile: (202) 616-4473
   E-mail: steven.talson@usdoj.gov
16 Attorneys for Defendant

17            IN THE UNITED STATES DISTRICT COURT

18             FOR THE DISTRICT OF HAWAII

19 IN RE                          )  CIVIL NO. 04-00661 REJ-BMK
   HAWAII FEDERAL ASBESTOS        )
20 CASES                          )  DEFENDANT UNITED STATES OF
                                  )  AMERICA'S NOTICE OF MOTION
21 This Document Applies To:      )  TO DISMISS PLAINTIFFS'
                                  )  COMPLAINT, OR IN THE
22 MERCY S. BYINGTON, individually)  ALTERNATIVE, FOR SUMMARY
   and as Personal Representative of the )  JUDGMENT, AND
23 Estate of JIMMY F. BYINGTON,   )  MEMORANDUM IN SUPPORT;
   deceased, EVELINE SHORT, and   )  CERTIFICATE OF SERVICE
24 BEVERLY ANN HAUOLI ANI, as     )
   Prochein Ami for MARGARET      )
25 BARBARA HA'EIHA'E ANI, a       )
   minor,                         )
26                                )
                                  )
27            Plaintiffs,         )
                                  )
28      vs.                       )

UNITED STATES OF AMERICA,    )
                            )
              Defendant.    )
_____

**MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant United States of America moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56, on the ground that Plaintiffs' claims are jurisdictionally barred by the applicability of the discretionary function exception to the limited waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

## INTRODUCTION

In a complaint filed against the United States pursuant to the FTCA on November 9, 2004, Plaintiffs seek money damages for the alleged wrongful death of Jimmy F. Byington (Mr. Byington) on June 27, 2002. Complaint ("Compl.") at 2-3. Plaintiffs allege that Mr. Byington was exposed to asbestos at various times and locations throughout his life (see Answers to Interrogatories filed in state court action, at pp. 1-3, Exh. C to Plaintiffs' Compl.), including exposure in the course of Mr. Byington's lifelong hobby of working on asbestos-containing automobile brakes and engine gaskets. Id. at p. 3. That asbestos exposure is the basis for Plaintiffs' state court suit against numerous private defendants in In Re: Hawaii State Asbestos Cases, Civil No. 02-1-1533-06 (Cir. Ct., 1st Cir., Hawaii).

The basis for Plaintiffs' federal claims in the instant suit is the allegation that Mr. Byington was exposed to asbestos in "Buildings 3400B, 3427, 3426, 3415 and others" at Hickam Air Force Base ("Hickam AFB"), Hawaii, from approximately 1989 to 1993. Compl. at p. 4, ¶ 6. During the relevant time alleged in Plaintiffs' federal suit, from November 6, 1989, to 1993, Mr. Byington was employed by the state of Hawaii as a laborer for the Hawaii Air National Guard (HIANG), at Hickam Air National Guard (Hickam ANG) base, located on a part of

Hickam AFB. U.S. Exh. A. Mr. Byington was not a federal employee.[1] (Compl. at 2-3 & Compl. Exh. C at 2.). Significantly, the buildings in which Mr. Byington worked at Hickam AFB were licensed by the United States Air Force (USAF) to the State of Hawaii, for use by the HIANG. <u>See</u>, U.S. Exh. B, USAF-HIANG Lease of November 13, 1975, USAF 01-00001-00012.[2]

Plaintiffs state two claims of negligence against the United States: (1) negligently permitting "dangerous and defective asbestos products to exist" in Buildings 3400B, 3427, 3426, 3415, and others, at Hickam AFB; and, (2) negligently failing to provide decedent with a "safe place of employment." Compl. at ¶ 8.

As shown below, by virtue of the arrangements made between the USAF and the HIANG, all responsibility to manage the asbestos in the buildings licensed to the HIANG, and to provide HIANG state employees with a "safe place of employment," rested with the HIANG (Mr. Byington's employer), and not the United States. Plaintiffs' suit effectively challenges discretionary decisions made by the United States in leaving responsibility for maintenance and safety of the licensed premises to the HIANG. It is well settled that where the United States decides to allocate such matters to either a contractor or, as in this case, a non-

---

[1] The question of whether an employee of a state National Guard is a state or federal employee only affects <u>military</u> members of the guard, and not civilian employees such as Mr. Byington. Even military members, except when called to federal duty or in limited circumstances not applicable here, are deemed state, not federal, employees. <u>See Maryland v. United States</u>, 381 U.S. 41, 48 (1965); <u>California National Guard v. Federal Labor Relations Authority</u>, 697 F.2d 874, 877 (9th Cir. 1983).

[2] In a Minute Order dated April 27, 2006, this Court allowed the parties limited discovery on sovereign immunity issues. In response to Plaintiffs' requests for document production, the United States provided copies of Air Force records bates-stamped as USAF 01-00001 to 01-00963. Relevant copies of documents from that production are attached hereto as exhibits, and the USAF bates-number of each document is provided for ease of reference. As the declarations of the records custodians who produced the documents make clear (see U.S. Exh. C, USAF 01-00947-00953), these documents were taken from official Air Force files, maintained in the ordinary course of business, and therefore, are exempt from hearsay exclusion pursuant to Fed. R. Evid. 802 (6), (8).

federal entity such as the HIANG, that delegation may not be challenged through means of a tort suit, and it is exempt from judicial review by the applicability of the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). Accordingly, this case should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, summary judgment should be granted pursuant to Fed. R. Civ. P. 56.

## STATEMENT OF FACTS

### A. The Premises at Issue Were Licensed to Mr. Byington's Employer, the Hawaii Air National Guard

Hickam AFB is a federal facility owned by the Department of Defense. U.S. Exh. B at p. 1. Mr. Byington was employed by the State of Hawaii at all times that he worked in HIANG facilities on Hickam AFB. Compl. at ¶ 12, U.S. Exh. A. It is indisputable that Mr. Byington's alleged exposure to asbestos at Hickam AFB occurred, if at all, in buildings 3400B, 3427, 3416, 3426 and 3415, Compl at ¶ 6, and that all of these buildings were licensed to decedent's employer – the HIANG – for use by the HIANG at all times relevant to this claim. U.S. Exh. B at pp. 1-10; U. S. Exh. D, Declaration of Ms. Lei Lum, ¶¶ 4-6.

The initial licensing agreement between the USAF and the HIANG for use of Hickam AFB facilities was executed in November 1975, and continues in effect today. Id. The Air Force has express statutory and regulatory authority to license buildings to the Air Guard. See U.S. Exh. D, Declaration of Ms. Lei Lum, ¶ 5, U.S. Exh. G. During the relevant time asserted in Mr. Byington's federal complaint - - from 1989 to 1993 - - the terms of the November 1975 license agreement controlled the allocation of responsibility for maintenance of the facilities, and safety of employees. Id.

**B.    The Premises at Issue Were Maintained by the Hawaii Air National Guard Pursuant To Licensing Agreements With The USAF**

The USAF-HIANG licensing agreement in effect during the time in which Mr. Byington worked for the HIANG imposed upon the HIANG responsibility for the maintenance and repair of the licensed premises.  See U.S. Exh. A, USAF-HIANG License Agreement dated November 11, 1975, paragraph 2, which provides:

> That the licensee shall maintain and keep in good repair and condition the premises herein authorized to be used, and all costs of operation, maintenance, and restoration occasioned by reason of the occupancy of the premises by the licensee shall be paid for from funds available to the licensee, or from funds other than those appropriated for the [USAF].

As the license agreement makes clear, the USAF did not assume any responsibility for the safety of HIANG's employees, and to the contrary, the parties expressly agreed that the USAF would not assume such liability, as evidenced in ¶ 4 of the USAF-HIANG license agreement (U.S. Exh. A), which provides in pertinent part:

> That the Government will not be responsible for any injury to persons or damage to property arising out of or incident to the use or occupancy of the licensed property by the licensee, however such injury or damage may be caused, and the licensee shall indemnify and save the Government harmless from any and all claims for any such injury or damage . . . .

Thus, responsibility for providing a safe workplace for Hawaii state employees rested with the state, and not the federal government.   As the following discussion of the HIANG's asbestos management program for the facilities at Hickam AFB shows, the HIANG understood and complied with this mandate.

**C.    The HIANG Asbestos Management Program at Hickam AFB**

As the documents provided to the Plaintiffs demonstrate, the state of Hawaii and the HIANG assumed the responsibilities as set forth in the 1975 facilities license agreement executed by the USAF and HIANG.  Of relevance here, the HIANG developed and implemented an asbestos management program that

1  covered the buildings at Hickam AFB licensed to the HIANG.  See U.S. Exh. E,

2  "Asbestos Management Program, Hawaii Air National Guard, Hickam Air Force

3  Base, Hawaii," USAF 01-00586-00619; 01-00644-00662.[3]

4   The HIANG Asbestos Management Program was prepared by the Air

5  National Guard Civil Engineering Technical Services Center, Minot, North

6  Dakota, and was issued in early 1992.   The program expressly identifies, and

7  applies to, all of the buildings alleged in the Mr. Byington complaint as containing

8  asbestos.  A survey of the licensed buildings was made in January 1992, and the

9  program was established in accordance with Air Force Regulation 91-42, Air Force

10  Facility Asbestos Management.  As stated therein, "[t]he base asbestos

11  management program consists of an asbestos management plan (AMP) and an

12  asbestos operating plan (AOP).  This report contains an AMP and an AOP which

13  have been developed for Hickam ANG base and its [geographically separated

14  units] and are consistent with AFR 91-42."  U.S. Exh. E at 1, ¶ 1.1 (emphasis

15  added).   Under the heading of "Objectives," the report states that the "overall

16  objective of the asbestos management program is to ensure that the health and

17  welfare of all base personnel are protected from the potentially harmful effects of

18  asbestos containing material."  Id. at ¶ 1.2 (emphasis added).  The plain meaning of

19  this objective is that the state correctly took responsibility for the health and

20  welfare of its employees, including that of providing a safe workplace.

21   While the details of the state's asbestos management program are not

22  relevant here (the state has not been sued by Mr. Byington), the report and program

23  set forth in substantial detail the duties and responsibilities undertaken by the

24  HIANG for the buildings under its control at Hickam AFB.  Addressing

25  asbestos containing materials (ACM), the report states that "[i]t is the intention of

26

27   [3] The index to the report indicates 45 pages of text.  The gaps and blank pages in the
bates-numbered documents appear to be an error in copying.

28

1   the Air Guard to remove ACM whenever it is opportune to do so, whenever it is a

2   potential threat to personnel health, and <u>as necessary to comply with applicable</u>

3   <u>regulations</u>." <u>Id</u>. (emphasis added).   Monitoring and surveillance of friable

4   asbestos are also addressed in the plan, which states that "[a]ll locations with

5   friable asbestos will be monitored on an on-going basis to ensure that the ACM

6   does not become damaged or deteriorate and pose a risk of exposure to base

7   personnel." <u>Id</u>. at p. 29, ¶ 2.4.   With respect to any duty to warn state employees

8   such as Mr. Byington of the dangers of asbestos, the HIANG states that:

9   
10          The general base population should have a good understanding of the
            potential asbestos health hazards.  They also need to understand that
11          undamaged asbestos in good condition poses no inherent hazard.  The APO
            will attempt to increase general base knowledge and awareness of asbestos
            concerns by disseminating general information to the base population using
            appropriate base procedures.
12   
13   <u>Id</u>. at p. 30, ¶ 2.6.  Clearly, any responsibility to inform Mr. Byington about the

14   presence of asbestos in the licensed facilities, and the duty to address any dangers

15   posed by the asbestos in those buildings, rested solely with the HIANG.

16          While the document clearly addresses the question of allocation of duty and

17   responsibility <u>vis-a-vis</u> the Air Force and HIANG, the declaration of Colonel

18   Michael Compton of the HIANG (U.S. Exh. F)  provides further explication of the

19   relationship.   Colonel Compton was the HIANG's Environmental Coordinator in

20   1992, and had additional duty as the Asbestos Program Officer pursuant to the

21   Asbestos Management Plan.  <u>See</u> U.S. Exh. E at p. 3.  As Colonel Compton

22   explains, prior to 1992, there was no requirement for the HIANG to have a formal

23   program to address asbestos, although "the HIANG actively monitored and tested

24   its facilities for asbestos" prior to 1992.  <u>Id</u>. at 1, ¶ 5.   Referencing the HIANG

25   Asbestos Management Plan, Colonel Compton explained that "the HIANG was

26   responsible for state worker health and safety while working in the HIANG

27   facilities."  <u>Id</u>.  In addition, Colonel Compton states that the HIANG provided

28   notice to state employees on the presence of asbestos in HIANG facilities, and also

provided training on asbestos safety.  Id.  Colonel Compton further states that the HIANG monitored and tested the air in the buildings where Mr. Byington worked. Id. at p. 2, ¶ 6-7.  Of all the tests taken, Colonel Compton advised that he was "not aware of any that ever exceeded, or even came close to exceeding, federal or state maximum contaminant levels."  Id. at ¶ 7.

In sum, during the period alleged in Mr. Byington's complaint, from 1989 to 1993, the HIANG was responsible for managing any asbestos in the buildings occupied by the HIANG, for the heath and safety of its employees, and for warning its employees, such as Mr. Byington, of any dangers posed by the presence of asbestos.  There is no evidence that the United States had, or assumed, any correlative duties.

## ISSUE PRESENTED

Does the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a) require dismissal of this lawsuit because the Air Force's decision to delegate building maintenance responsibilities to its licensee, the Hawaii Air National Guard, State of Hawaii, was discretionary and susceptible to economic, social, and political policy considerations?

## ARGUMENT

**DISMISSAL, OR IN THE ALTERNATIVE, SUMMARY JUDGMENT, IS WARRANTED BECAUSE THE DISCRETIONARY FUNCTION EXCEPTION OF THE FEDERAL TORT CLAIMS ACT DEPRIVES THIS COURT OF JURISDICTION**

## I.    STANDARD OF REVIEW

This motion is directed to the Court's jurisdiction, and thus is properly styled as a motion to dismiss under Fed. R. Civ.  P. 12(b)(1).  An issue of subject matter jurisdiction is properly decided under Fed. R. Civ. P. 12(b)(1).  See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  Subject matter jurisdiction is a threshold issue, and the separation of powers doctrine requires a federal court to determine whether it has jurisdiction at the outset, rather than to defer the issue

1  until trial.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95
2  (1998).

3       In ruling on a motion to dismiss under Rule 12(b)(1), "no presumptive
4  truthfulness attaches to the plaintiff's allegations."  Mortensen v. First Federal
5  Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977);  accord, St. Clair
6  v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  As further explained in White
7  v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000), the court is not limited to the
8  pleadings, but may, in deciding a Rule 12(b)(1) dismissal motion, "look beyond the
9  complaint" without converting the motion into one for summary judgment) (citing
10 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.30[4], at 12-39 (3d ed.
11 1999)).

12      In the Ninth Circuit, the United States bears the initial burden of proving the
13 applicability of the discretionary function exception to the FTCA's general waiver
14 of immunity.  Valdez v. United States, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing
15 Prescott v. United States, 973 F.2d 696, 701-702 (9th Cir. 1992)).   In the instant
16 case, the United States meets the Prescott burden through the arguments below and
17 the appended evidence, which together justify dismissal under Rule 12(b)(1).
18 Nevertheless, the government also seeks Rule 56 summary judgment in the
19 alternative.

20      Under Fed. R. Civ. P. 56(c), summary judgment should be granted where
21 there are no genuine issues of material fact and the moving party is entitled to
22 judgment as a matter of law.  Summary judgment is proper against a party who
23 fails to make a showing sufficient to establish the existence of an element essential
24 to that party's case and on which that party will bear the burden of proof at trial.
25 Celotex  Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Electric Industrial
26 Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby,
27 477 U.S. 242 (1986).

28

The moving party has the initial burden of showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "Although the moving party has the initial burden of demonstrating that summary judgment is proper, that burden may be discharged by pointing out to the court an absence of facts to support the nonmoving party's case." McLandrich v. Southern California Edison Co., 942 F. Supp. 457, 461 (S.D. Cal. 1996). The United States, as the moving party,"is not required to produce evidence showing the absence of a genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the nonmoving party's claim." Id. The non-moving party is required to go beyond the pleadings and by its own affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324 (emphasis added).

Plaintiffs must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party's burden on summary judgment is the evidentiary standard which the party must satisfy at trial. Anderson v. Liberty Lobby, 477 U.S. at 255. The United States, moreover, does not have to prove that Plaintiffs' case is "wholly frivolous." Burke v. Jacoby, 981 F.2d 1372, 1379 (2d Cir. 1992). As we show below, the United States' assertion of its jurisdictional defenses meets the initial burden established by Prescott, and the standards of both Rule 12(b)(1) and Rule 56.

## II.    THE LAW UNDER THE FEDERAL TORT CLAIMS ACT

### A.    Federal Tort Claims Act

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, under which Plaintiffs bring suit, is a limited waiver of sovereign immunity. United States v. Idaho, 508 U.S. 1, 6-7 (1993). The FTCA provides the exclusive and limited waiver of sovereign immunity for money damage suits against the

United States that sound in non-maritime tort. 28 U.S.C. §§ 2674, 2679(b)(1).
The consent of the United States to be sued cannot be implied, but must be
unequivocally expressed and strictly construed.   United States v. Nordic Village,
Inc., 503 U.S. 30, 34-35 (1992).   Because the federal government "can be sued
only to the extent that it has waived its immunity, due regard must be given to the
[Act's] exceptions." United States v. Orleans, 425 U.S. 807, 814 (1976).  Thus,
waivers of sovereign immunity are to be strictly construed, United States v. Trident
Seafoods Corp., 92 F.3d 855, 864 (9th Cir.1996), and "the court must construe any
ambiguities in favor of immunity." United States v. Williams, 514 U.S. 527, 531
(1995).

If asserted liability under the FTCA falls within an exception, the claims
must be dismissed, because failure of a claim to satisfy the standards of the FTCA
means that the court lacks subject matter jurisdiction. See Borquez v. United
States, 773 F.2d 1050, 1052 (9th Cir. 1985).

**B.    The Discretionary Function Exception Of The FTCA**

The discretionary function exception of the FTCA insulates from tort suit
governmental actions and decisions grounded in considerations of public policy.
United States v. Gaubert, 499 U.S. 315, 325 (1991).

Section 2680(a) of the FTCA states the exception, providing that the United
States does not waive its sovereign immunity for "[a]ny claim . . . based upon the
exercise or performance or the failure to exercise or perform a discretionary
function or duty on the part of a federal agency or an employee of the Government,
whether or not the discretion involved be abused."

The Supreme Court has articulated a two-pronged test to determine the
applicability of the discretionary function exception: (1) whether the alleged
wrongful government conduct violated a specific and mandatory regulation or
statute, and thus the government lacked discretion; and (2) if not, whether the
governmental action challenged was susceptible to being based upon social,

1    economic, or political policy considerations.  See United States v. Gaubert, 499

2    U.S. at 325;  National Union Fire Ins. v. United States, 115 F.3d 1415, 1419-20

3    (9th Cir. 1997).

4        In Gaubert, the Supreme Court defined the contours of whether the activity

5    at issue is susceptible of being based on social, economic, or political policy.

6    Plaintiff there sought recovery from the United States for damages allegedly

7    resulting from the Federal Home Loan Bank Board's mismanagement of a bank. Id.

8    at 319-20.  Rejecting the argument that only high level planning or policy

9    decisions were exempt from liability under the discretionary function exception,

10   the Court held that day-to-day activities at the operational level are immune from

11   liability if the activities involved are grounded in policy considerations.  Id. at 325.

12       The Court further explained that the government need not demonstrate that

13   each challenged action is rooted in a social, economic or political policy

14   consideration.  Rather, the Court held that, when statutes, regulations, or guidelines

15   allow a government agent to exercise discretion, "it must be presumed that the

16   agent's acts are grounded in policy when exercising that discretion." Id. at 324.

17   Finally, the Court instructed that the "focus is not on the agent's subjective intent . .

18   ., but on the nature of the actions taken and on whether they are susceptible to

19   policy analysis." Id. at 325 (emphasis added); Lesoeur v. United States, 21 F.3d

20   965, 967-68 (9th Cir. 1994) (government need only prove that the decision is

21   subject to policy analysis, not that it actually balanced factors); Kennewick

22   Irrigation District v. United States, 880 F.2d 1018, 1028 (9th Cir. 1989)(rejecting

23   the argument that "the discretionary function exception cannot apply in the absence

24   of a 'conscious decision'").  Thus, there is no need to point to a specific government

25   decision in applying the two-pronged test; if the questioned activity is one capable

26   of analysis based upon social, economic or political considerations (susceptible of

27   policy analysis), it falls within the exception, whether or not the agency actually

28   engaged in the analysis.

1  **III.    THE UNDISPUTABLE FACTS IN THIS MATTER COMPEL THE**
2  **CONCLUSION THAT THE DISCRETIONARY FUNCTION**
   **EXCEPTION BARS THE SUIT**

3      The discretionary function exception analysis set forth by the Supreme Court

4  requires that the Court examine the government's role in the instant case to

5  determine if the challenged governmental conduct was constrained by a mandatory

6  and specific statute or regulation that the government violated, and if not, whether

7  the conduct at issue was susceptible to policy judgment.  Here, the government's

8  decision to license various buildings at Hickam AFB to the HIANG, and to leave

9  maintenance of those buildings to the HIANG, did not involve violations of self-

10  imposed mandatory and specific obligations and plainly was grounded in policy

11  decisions of the type that Congress intended to shield from tort liability.

12      For Plaintiffs to proceed with their suit against the United States, the record

13  must show that the relevant actions of the government violated mandatory and

14  specific constraints that it had imposed on itself, or were not rooted in policy.[4]   A

15  showing of governmental negligence is both insufficient and irrelevant for

16  purposes of this analysis.[5]   Nevertheless, we look to the Plaintiffs' complaint to

17  determine whether their allegations of negligence can form a basis for federal

18  liability under the jurisdictional analysis.

19  _____

20      [4] The Ninth Circuit has made it clear that a mandatory obligation must also be <u>specific</u> to
    defeat the first prong of this analysis.  <u>See</u> <u>Kennewick</u>, 880 F.2d at 1027; <u>Blackburn v. United</u>
21  <u>States</u>, 100 F.3d 1426, 1430 (9th Cir. 1996).  Moreover, "the presence of a few, isolated
    mandatory provisions does not transform an otherwise suggestive set of guidelines into binding
22  agency regulations."  <u>Sabow v. United States</u>, 93 F.3d 1445 (9th Cir. 1996).

23      [5] Whether Plaintiffs seek recovery under a theory of direct liability or vicarious liability is
    immaterial as a matter of <u>law</u>.  The basis for liability, including state law doctrines, is irrelevant
24  to jurisdictional analysis where it simply states alternate theories of negligence.  Negligence is
    irrelevant to determining the applicability of the discretionary function exception.  <u>In Re Glacier</u>
25  <u>Bay</u>, 71 F.3d 1447, 1451 (9th Cir.1995); <u>Routh v. United States</u>, 941 F.2d 853, 855 (9th Cir.
    1991)("[i]ssues of negligence are irrelevant to the discretionary function inquiry . . . .)(emphasis
26  added); <u>In re Consolidated U. S. Atmospheric Testing</u>, 820 F.2d 982, 996 (9th Cir. 1987).  The
    issue of negligence is reached <u>only</u> if the jurisdictional exceptions are found inapplicable.
27  Similarly, any theory of recovery based on strict liability is proscribed under the FTCA.  The
    FTCA does not allow for recovery based on any form of strict liability.  <u>See Laird v. Nelms</u>, 406
28  U.S. 797, 798-99 (1972); <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31, (1953); <u>Bramer v.</u>
    <u>United States</u>, 595 F. 2d 1141, 1144 & n.7 (9th Cir. 1979).

1    Plaintiffs' complaint asserts government liability based on an allegation that
2    the United States "carelessly and negligently permitted dangerous and defective
3    asbestos products to exist at the hereinabove described locations; and furthermore,
4    Defendant negligently failed to provide Decedent JIMMY F. BYINGTON a safe
5    place of employment by reason of its acts, omissions and conduct."  Compl. at ¶ 8.
6    As set forth, these allegations of federal negligence must fail, because any duty to
7    address asbestos in Mr. Byington's workplace, and to provide a safe workplace,
8    rested not with the United States, but rather, with the state of Hawaii and the
9    HIANG.   In cases involving alleged negligent activity in the context of
10   government delegation of tasks to private contractors, the only way the
11   discretionary function exception may be overcome is if the government has
12   imposed upon itself mandatory and specific duties, which it (as opposed to its
13   contractor or a third-party such as the HIANG) then fails to follow.  In this context,
14   and although not asserted here, the discretionary function exception would also bar
15   claims such as that the government negligently failed to supervise the HIANG's
16   duty to comply with applicable statutes, guidelines, or regulations, as set forth in
17   the license agreement.

18   **A.    The United States Did Not Violate Any Self-Imposed Mandatory
         and Specific Obligations**

19   The sole issue with respect to the first prong of the analysis is whether the
20   United States had discretion to license the facilities to the HIANG, leaving
21   responsibility for safe building maintenance with the HIANG.   The Air Force's
22   decision to license facilities to the HIANG was expressly authorized by statute and
23   Air Force regulations.  Air Force Instruction 32-9003, titled *Granting Temporary*
24   *Use of Air Force Property* (copy attached as U.S. Exh. G), specifically authorizes
25   the Air Force to license real property to, among others, the Air National Guard.
26   See U.S. Exh. G at p. 17, ¶ 3.5.  This instruction identifies 32 U.S.C. §503 as the
27   statutory authority for such licensing agreements.  Nothing in either the statute or
28

the Air Force instruction, and its predecessor regulation, AFR 87-3, prevents the Air Force from delegating all building maintenance responsibility to a licensee.

This Court's decision in <u>Tyni v. United States</u>, No. 99-00907 HG-KSC, dated November 7, 2001 (copy attached as U.S. Exh. H), is instructive.  In <u>Tyni</u>, plaintiff brought suit against the United States for injuries suffered while removing lead-based paint at Hickam AFB.  Plaintiff was employed by a government subcontractor.  As in this case, the agreement between the government and plaintiff's employer allocated responsibility for health and safety to a non-federal entity, with no retained responsibilities for the government.  The United States raised, <u>inter alia</u>, the discretionary function exception of the FTCA as a bar to Plaintiffs' claims.  In granting summary judgment for the government, this Court held that the decision to delegate safety matters to its contractor was not proscribed by a mandatory and specific requirement and was a matter of protected policy, <u>Id</u>. at pp. 22-26.  Accordingly, this Court found that the discretionary function exception barred Plaintiff's negligence claim.  Just as in <u>Tyni</u>, the government's decision here, in its contract with the HIANG, to require the HIANG to take responsibility for maintenance and environmental and safety compliance is consistent with similar cases holding such choices to be within the discretionary function exception.  <u>See</u> <u>e</u>.<u>g</u>., <u>Andrews v. United States</u>, 121 F.3d 1430, 1440 (11th Cir. 1997)("The law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so;" "the discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors").

Thus, the first prong of the Supreme Court's test for determining the applicability of the discretionary function exception is met in this case because there were no applicable statutes or regulations that prohibited the United States from licensing the facilities to the HIANG, or by the terms of the license,

1  allocating responsibility for maintenance and safety issues to the HIANG at
2  Hickam AFB.

3  **B.  The United States' Actions Were Susceptible Of Policy Considerations**

4  The second prong of the Supreme Court's discretionary function analysis test
5  is met because the government's decision to delegate responsibility for
6  maintenance of the Hickam AFB facilities licensed to the HIANG was based on,
7  and susceptible of being based on, policy considerations of the type that Congress
8  intended to shield from judicial review.  Indeed, the Ninth Circuit has held that the
9  exception applies whenever an agency must "balance[] competing policy
10 concerns."  Gager v. United States, 149 F.3d 918, 921 (9th Cir. 1998); see also,
11 Phoenix Baptist Hospital v. United States, 937 F.2d 452, 453 (9th Cir. 1991)(after
12 finding discretion, "we presume that the decision . . . is grounded in matters of
13 policy.").

14 As noted above, the government's decision to license the facilities to the
15 HIANG was expressly authorized by both statue and regulation.  As the Supreme
16 Court instructed in Gaubert, when statutes, regulations, or guidelines allow a
17 government agent to exercise discretion, "it must be presumed that the agent's acts
18 are grounded in policy when exercising that discretion."  499 U.S. at 324.  That
19 presumption should be dispositive here.

20 Here, the United States made the decision to allow the HIANG to use a
21 portion of the Hickam AFB facility.  This decision to engage in intergovernmental
22 cooperation on matters involving the protection of the public plainly was policy-
23 based.  Similarly, the decision to permit this use at no direct cost to the state of
24 Hawaii was also susceptible to policy analysis, and indeed, must be presumed to be
25 policy based because it was authorized, and based on, statutory authority.  See
26 Gaubert, 499 U.S. at 324.  Finally, the decision to delegate to the State of Hawaii
27 all responsibilities for the upkeep of the licensed facilities was susceptible to policy
28

1   analysis.

2       To the extent that Plaintiffs' complaint is read as a challenge to the United

3   States' decision, in the licensing agreement, to allocate or delegate responsibility

4   for the condition of the licensed premises to the HIANG, that decision is exempt

5   from judicial review because the discretionary function exception to the FTCA

6   bars such allegations.  It is well established that the United States' decision to

7   delegate tasks to parties with whom it contracts, as it did with the HIANG in the

8   instant case, is protected by the discretionary function exception.[6]

9       Nor can it be argued that any alleged failure to oversee the HIANG's

10  maintenance and safety efforts can be the subject of an FTCA action.  Decisions of

11  the federal government in allocating responsibility for, e.g., maintenance, health,

12  and safety matters to contractors and third-parties, have long been held to be

13  protected policy-based decisions.  See Kirchmann v. United States, 8 F.3d 1273,

14  1277-78 (8th Cir. 1993)("If arguably based on policy considerations, both

15  negligence in supervising a contractor and the failure to supervise a contractor at

16  all are included in the decisions protected by the discretionary function

17  exception."); In re Consolidated U.S. Atmospheric Testing, 820 F.2d at 982, 995-

18  96 (9th Cir. 1987); Duff v. United States, 999 F.2d 1280, 1281 (8th Cir. 1993)

19  (decision to delegate safety issues to contractor based on policy because the United

20  States was entitled "to take advantage of a contractor's special expertise, thereby

21  creating the opportunity for a safer, more efficient operation"); Layton v. United

22  States, 984 F.2d 1496, 1502-03 (8th Cir. 1993) (delegation of safety responsibility

23  to contractor falls within discretionary function exception); Totten v. United States,

24  _____

25      [6] See In re Consolidated U.S. Atmospheric Testing, 820 F.2d at 995-96; Domme v. United
    States, 61 F.3d 787, 791 (10th Cir. 1995); Kane v. United States, 15 F.3d 87, 89 (8th Cir. 1994); Duff v.
26  United States, 999 F.2d 1280, 1281-82 (8th Cir. 1993); Layton v. United States, 984 F.2d 1496, 1501-02
    (8th Cir.); Shuman v. United States, 765 F.2d 283, 291-95 (1st Cir. 1985); McMichael v. United States,
27  751 F.2d 303, 307 (8th Cir. 1985) ("[deciding to award a government defense contract to a particular
    [contractor] involves weighing various facts and policies and this is discretionary in nature"); Feyers v.
28  United States, 749 F.2d 1222, 1226-27 (6th Cir. 1984); Hagy v. United States, 976 F. Supp. 1373, 1378
    (W.D. Wash. 1997).

806 F.2d 698, 701 (6th Cir. 1986);  Shuman v. United States, 765 F.2d 283, 291-95 (1st Cir. 1985)(in shipyard worker mesothelioma case, government action in leaving safety and health to contractor protected); Feyers v. United States, 749 F.2d 1222, 1226-27 (6th Cir. 1984) (allegation that government breached nondelegable duty to provide safe workplace to contractor employee barred by discretionary function exception);  Hagy v. United States, 976 F. Supp. 1373, 1378 (W.D. Wash. 1997) ("In light of such practical considerations, an agency may determine that operational safety will be enhanced through reliance on the contractor's special expertise."); Jones v. United States, 698 F. Supp. 826, 833 (D. Hawaii 1988)(Air Force decision to give independent contractor "primary responsibility for safety in pest control, while only retaining oversight authority, is protected by the discretionary function exception.").

The government's delegation of safety responsibilities to tenants, through lease agreements, is precisely the kind of discretionary decision that gives rise to a "strong presumption" that the decision was grounded in public policy.  See Gaubert, 499 U.S. at 324.  See also Vallier v. Jet Propulsion Laboratory, 120 F. Supp. 2d 887, 913-14 (C.D. Cal. 2000),  Hagy, 976 F. Supp. at 1378-79.

Plaintiffs' attempt to use the FTCA here as a basis for federal liability is an effort to do what Congress intended to prevent by enacting the discretionary function exception: "judicial 'second-guessing' of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Varig Airlines, 467 U.S. at 814; Kennewick Irr. Dist. v. United States, 880 F.2d at 1028; In re Consolidated U.S. Atmospheric Testing, 820 F.2d at 995-96; Domme v. United States, 61 F.3d at 791; Kirchmann v. United States, 8 F.3d at 1277-78; Totten v. United States, 806 F.2d at 701-02; Shuman v. United States, 765 F.2d at 291-95.

Finally, we note that any suggestion that this case may proceed because the United States had a non-delegable duty under state law with respect to the licensed

1   premises must fail.  As noted supra, p. 12 n. 5, issues of duty established by state

2   law are only relevant if the court first determines that it has jurisdiction, and that

3   the discretionary function exception does not apply.  See In re Consolidated U. S.

4   Atmospheric Testing, 820 F.2d 982, 996 (9th Cir. 1987), where the plaintiffs

5   sought to avoid the discretionary function exception by citing to Gardner v. United

6   States, 780 F.2d 835, 837 (9th Cir. 1986).  The Ninth Circuit rejected plaintiffs'

7   argument, noting that in Gardner the "discretionary function exception was not

8   raised or discussed." 820 F.2d at 996. The Ninth Circuit went on to explain that it

9   "is irrelevant to the discretion issue whether [the government] or its employees

10   were negligent in failing to adequately protect the public" and that when "an

11   agency determines the extent to which it will supervise the safety procedures of

12   private individuals, it is exercising discretionary regulatory authority of the most

13   basic kind" (id.), quoting, first, Allen v. United States, 816 F.2d 1417 (10th Cir.

14   1987), and, second, Varig Airlines, 467 U.S. at 819. In other words, while state law

15   doctrines of non-delegable duty may enable a plaintiff to overcome the

16   government's assertion of the independent contractor defense where the

17   government has delegated responsibilities to its contractor, such state law doctrines

18   are irrelevant to discretionary function exception analysis when the government

19   has chosen to delegate the relevant responsibilities to the contractor.

20      This Court in Tyni reached the same conclusion as was reached in the cases

21   noted above, in finding that Plaintiff's theories of government liability under

22   Hawaii state law were not relevant.  See Tyni, U.S. Exh. H, at pp. 29-32.  As stated

23   in Tyni, if a court finds that an action is barred by the discretionary function

24   exception, "the Court does not have subject matter jurisdiction to reach the merits

25   of Plaintiff's state law theories."  Id. at p. 30.  In the absence of a self-imposed,

26   mandatory and specific federal obligation barring such delegation, the

27   discretionary function exception insulates such delegations from tort suit. No such

28   obligation exists here.

# IV. CONCLUSION

This is a case where Plaintiffs are attempting to impose duties on the United States that were left solely, as a matter of policy-based discretion, with the HIANG. The USAF leased, through a licensing agreement, a number of buildings at Hickam AFB to the HIANG during the time that Plaintiffs allege that Mr. Byington was exposed to the asbestos . The HIANG, by the express provisions of the licensing agreement, assumed responsibility for maintaining the facilities, complying with applicable regulations, and ensuring the safety of its own employees, such as Mr. Byington. There is simply no basis for imposing liability on the United States in such a case. For the foregoing reasons, this tort action should be dismissed for lack of subject matter jurisdiction, or in the alternative, summary judgment should be granted.

Pursuant to Local Rule of Court 7.5(e), for the United States District Court for the District of Hawaii, I hereby certify that this notice and memorandum do not exceed either the page or word limits of the rule.

DATED: September 26, 2006.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER, III
Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

DAVID S. FISHBACK,
Assistant Director
Environmental Torts Section
Civil Division

EDWARD H. KUBO, JR.
United States Attorney

R. MICHAEL BURKE
Assistant U.S. Attorney


/s/ R. MICHAEL BURKE
_____

STEVEN TALSON
Senior Trial Counsel
TIMOTHY B. WALTHALL
Trial Attorney
Environmental Torts
Civil Division
U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE | CIVIL NO. 04-00661 REJ-BMK |
| HAWAII FEDERAL ASBESTOS CASES | CERTIFICATE OF SERVICE |
| This Document Applies To: | |
| MERCY S. BYINGTON, individually and as Personal Representative of the Estate of JIMMY F. BYINGTON, deceased, EVELINE SHORT, and BEVERLY ANN HAUOLI ANI, as Prochein Ami for MARGARET BARBARA HA'EIHA'E ANI, a minor, | |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was  served on the following at their last known addresses:

Served Electronically through CM/ECF:

L. Richard DeRobertis        rd@gogaliher.com
September 26, 2006

Jeffrey T. Ono            jto@gogaliher.com
September 26, 2006

Served by First-Class Mail:

Gary O. Galiher, Esq.          September 26, 2006
610 Ward Avenue
Second Floor
Honolulu, Hawaii 96814

DATED: September 26, 2006, at Honolulu, Hawaii.

/s/ Myra Y. Peterson
_____