**U.S. EXHIBIT H**



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 0 5 2001

at __11__ o'clock and _36_ min. ___ M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID TYNI, | )  Civil No. 99-00907 HG-KSC |
| Plaintiff, | )  **ORDER DENYING DEFENDANT UNITED** |
| | )  **STATES' MOTION TO DISMISS AND** |
| vs. | )  **GRANTING DEFENDANT'S MOTION** |
| | )  **FOR SUMMARY JUDGMENT** |
| UNITED STATES, | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT UNITED STATES' MOTION TO DISMISS AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

David Tyni ("Plaintiff") brings suit against the United States for an injury he suffered while working to remove lead-based paint from military family housing at Hickam Air Force Base. Plaintiff was hired by a subcontractor which was, in turn, a subcontractor to Service Alliance Systems, Inc., which was hired as an independent contractor by the United States. Before the Court is the United States' Motion to Dismiss, or in the Alternative, for Summary Judgment.

The Court lacks subject matter jurisdiction over Plaintiff's Complaint because Plaintiff's claims are barred by the independent contractor exception and the discretionary function exception of the Federal Tort Claims Act. The United States' Motion to Dismiss is DENIED; the United States' Motion for Summary Judgment is GRANTED.

**U.S. EXHIBIT H**

## PROCEDURAL HISTORY

On December 22, 1999, Plaintiff filed a Complaint against George Radenhurst[1] and the United States for money damages.

On March 13, 2000, the United States filed an Answer.

On July 10, 2000, the parties filed a Stipulation of Partial Dismissal as to Claims Against Defendant George Rodenhurst Pursuant to FRCP 41(A)(1)(ii).

On October 4, 2000, the United States' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Gov. Mot."), was filed. On the same day, the "United States' Concise Statement of Facts in Support of United States' Motion to Dismiss, or in the Alternative, for Summary Judgment," was filed.

On December 15, 2000, Plaintiff's Opposition to United States' Motion to Dismiss, or in the Alternative, for Summary Judgment, was filed. On the same day, "Plaintiff's Separate and Concise Statement of Facts in Support of Its Opposition to United States' Motion to Dismiss, or in the Alternative, for Summary Judgment," was filed.

On December 26, 2000, the United States' Reply to Plaintiff's Opposition to the United States' Motion to Dismiss, or, in the Alternative, for Summary Judgment, was filed.

_____

[1]The correct spelling is Rodenhurst. See Rodenhurst Decl., Ex. 6, attached to United States' Motion to Dismiss, or in the Alternative, for Summary Judgment.

2

**U.S. EXHIBIT H**

On January 3, 2001, the United States filed a "Supplemental [sic] to Exhibit '6' of United States' Motion to Dismiss, or in the Alternative, for Summary Judgment Filed October 4, 2000."

On January 4, 2001, the United States' Motion to Dismiss, or in the Alternative, for Summary Judgment, came for hearing before the Court.

On April 2, 2001, the Court received a letter from Plaintiff's attorney enclosing the Ninth Circuit decision in Marlys Bear Med. v. United States, 241 F.3d 1208 (9th Cir. 2001).

On April 9, 2001, the Court received a letter from the United States' attorney informing the Court that it intended to file a motion for leave to file a supplemental memorandum.

On April 12, 2001, the United States' Motion for Leave to File a Supplemental Memorandum in Support of Its Motion to Dismiss, or in the Alternative, for Summary Judgment, and the Supplemental Memorandum were filed. Also filed was an Ex Parte Motion to Shorten Time to Hear the United States' Motion for Leave to File a Supplemental Memorandum in Support of Its Motion to Dismiss, or in the Alternative, for Summary Judgment.

On April 12, 2001, the Court issued a Minute Order granting the United States' Motion for Leave to File a Supplemental Memorandum in Support of Its Motion to Dismiss, or in the Alternative, for Summary Judgment, which rendered the Ex Parte

**U.S. EXHIBIT H**

Motion to Shorten Time moot.

On April 19, 2001, Plaintiff's Supplemental Memorandum in
Opposition to United States' Motion to Dismiss, or in the
Alternative, for Summary Judgment was filed.

On April 24, 2001, the United States' Reply to Plaintiff's
Response to United States' Supplemental Memorandum in Support of
Its Motion to Dismiss, or in the Alternative, for Summary
Judgment, was filed.

### STATEMENT OF FACTS

On April 19, 1996, Plaintiff suffered a chemical burn to his
left foot while employed on a project to remove lead-based paint
from military family housing at Hickam Air Force Base.  (Ex. A,
attached to Pl. Opp.; Answer at 3.)  Plaintiff was removing lead
paint with the chemical "Peel Away."  (Ex. B at 39, Ex. F, ID
00217, attached to Pl. Opp.)  While scraping off the paint
loosened by Peel Away, Plaintiff felt a burning sensation on his
left foot, but does not remember whether the chemical entered
through his boot or through the paper suit.  (Tyni Dep. at 39-41,
Ex. 9, attached to Gov. Mot.)  Plaintiff reported the incident to
his supervisor and had his foot examined and treated.  (Id. at
39-41, 44.)  Plaintiff returned to work within a few days and
continued to work for several weeks.  (Id. at 49.)  From May 19,
1996 until he was incarcerated at Kulani Correctional Facility in

**U.S. EXHIBIT H**

Hilo, Hawaii in July 1998, Plaintiff was unemployed due to his foot injury. (Id. at 57.)

On the date of his injury, Plaintiff was employed by Kiwi International ("Kiwi"). Kiwi was a subcontractor to Carter-Hansen Associates ("Carter-Hansen"), which in turn was the subcontractor to Service Alliance Systems, Inc. ("Service Alliance"). The United States had hired Service Alliance as the prime independent contractor responsible for the removal of lead-based paint from military family housing at Hickam Air Force Base. (Exs. 1-4, attached to Gov. Mot.)

The contract between the United States Air Force and Service Alliance, Contract No. F64605-95-C0046 ("contract"), was the standard product of a policy decision by Congress to implement and employ uniform policies and procedures for government contracting and government acquisition of goods and services by all executive branch agencies. 48 C.F.R. Ch. 1 et seq. The uniform policies and procedures comprise the Federal Acquisition Regulations System ("F.A.R."). See id. The contract between the United States and Service Alliance includes safety provisions designated as the sole responsibility of the independent contractor. The contract states, for example: "The Contractor shall furnish all labor, materials and equipment for the prevention of environmental pollution. Environmental pollution

**U.S. EXHIBIT H**

is defined as the presence of chemical, physical or biological elements or agents which adversely affect human health or welfare . . . ." (Ex. I, ID 00211, attached to Pl. Opp.; see also Ex. 1 at ID 00216, attached to Gov. Mot.; Rodenhurst Decl. ¶ 5, Ex. 6, attached to Gov. Mot.; F.A.R. 52.236-13(a), Ex. 8, attached to Gov. Mot.) The contract specifies, for example, that special protective clothing should be furnished to the workers:

> Furnish personnel who will be exposed to lead-contaminated dust with appropriate disposable protective whole body clothing, head covering, gloves, and foot coverings. Furnish appropriate disposable plastic or rubber gloves to protect hands. Reduce the level of protection only after obtaining approval from the [Certified Industrial Hygienist].

(Ex. 1 at ID 00216.) The contract also requires that the contractor hire a Certified Industrial Hygienist to certify the training of personnel involved in the lead-based paint removal work, to inspect and directly monitor the work, and to review and certify a lead containing paint removal plan for conformance with the applicable standards. (Ex. 1 at ID 00214-15 §§ 2A.2.4, 2A.2.4.1.) The contract states that the "Contractor shall maintain an adequate inspection system and perform such inspections as will ensure that the work performed under the contract conforms to contract requirements." (F.A.R. 52.246-11(b), Ex. 5, attached to Gov. Mot., see also Ex. 1 at ID 00214-15 §§ 2A.2.4, 2A.2.4.1.)

**U.S. EXHIBIT H**

At the time of Plaintiff's injury, Plaintiff was wearing a paper coverall provided to him by his employer, instead of the recommended protective suit and gloves previously provided to him by his employer, and as required by the terms of a contract between the United States and the independent contractor, apparently because the supply of the recommended uniform had diminished. (Ex. F, ID 00218, 00281, attached to Pl. Opp.; Tyni Dep. of Oct. 25, 2000, Ex. B at 32, 35-37, 39, attached to Pl. Opp.; Ex. C, attached to Pl. Opp.) Prior to the alleged accident, Plaintiff had been receiving protective clothing from John Smith, President of Kiwi. (Ex. 9 at 34; Ex. 4.) He understood that the reason for wearing the protective suit was to protect him from the Peel Away, pollution and lead paint. (Ex. 9 at 67.) He was also told that skin contact could cause a chemical burn. (Id.) Plaintiff does not claim any injury from exposure to lead, but only injury from the chemical Peel Away.

The United States retained the authority to issue an order stopping all or part of the work if the contractor violated any environmental protection provision and does not, upon notification, take immediate corrective action. (Ex. I, ID 00211, attached to Pl. Opp.) Also, a Government representative, George Rodenhurst ("Rodenhurst"), visited the site each day and conducted limited inspections of the contractor's work. (Answer

**U.S. EXHIBIT H**

at 4.)  Rodenhurst performed inspections to observe and note the progress of the work and ensure completion in accordance with the contract.  (Rodenhurst Decl. ¶¶ 4, 5, Ex. 6, attached to Gov. Mot.)  Rodenhurst was not a safety inspector for contractor employees.  (Id. ¶ 5.)  He would, however, advise the contractor of any safety violations observed during the course of his inspection.  (Id.)  According to Rodenhurst:

> The safety of contractor employees is the responsibility of the contractor as provided for under the contract. . . . On those occasions when I conducted field inspections to monitor the progress of the work I was not required to conduct safety inspections, and did not conduct safety inspections to determine whether or not contractor employees were being issued proper personal protective equipment, or using such protective equipment properly.

(Id. ¶¶ 5, 9.)  In his deposition, Plaintiff stated he knew that Rodenhurst was the United States' inspector, but that Rodenhurst only spoke with Plaintiff's supervisor during his visits.  (Tyni Dep. at 60-61.)  Any concerns Plaintiff may have had about his job were addressed to his supervisor, John Smith.  (Tyni Dep. at 61.)  According to the contract, "[t]he presence or absence of a Government inspector does not relieve the Contractor from any contract requirement . . . ."  (F.A.R. 52.246-12(d), Ex. 5, attached to Gov. Mot.)

**U.S. EXHIBIT H**

## STANDARD OF REVIEW

I.    Motion to Dismiss

A motion to dismiss will be granted where a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Fidelity Fin. Corp. v. Fed. Home Loan Bank, 792 F.2d 1432, 1435 (9th Cir. 1986), cert. denied, 479 U.S. 1064 (1987); Stender v. Lucky Stores, Inc., 766 F. Supp. 830, 831 (N.D. Cal. 1991). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996). Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss. Id.; see also Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

II.   Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file [in the case] that it believes demonstrate the absence of any genuine issue of material fact."

**U.S. EXHIBIT H**

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment without significant probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The court must view the facts in the light most favorable to the non-moving party (State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989)). The non-moving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. T.W. Elec. Serv., 809 F.2d at 630; Fed. R. Civ. P. 56(e). Furthermore, a court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

ANALYSIS

Plaintiff is suing the United States for negligence based on the acts or omissions of (1) the independent contractor or subcontractors and (2) the United States. In the Complaint, Plaintiffs allege that the United States and/or its agents

10

**U.S. EXHIBIT H**

controlled and inspected the work site, knew or should have known that Plaintiff was working in an unsafe working environment, failed to provide sufficient warning, advice, supervision, and/or protective measures and equipment to prevent Plaintiff's injury, and failed to provide a safe working environment, protective gear, and first aid supplies, which allegedly caused severe injuries to Plaintiff.  (Compl. ¶¶ 13-17.)

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's case as the United States' decision to hire private contractors and to leave safety matters to the contractors results in the United States being protected from tort suit by the independent contractor and discretionary function exceptions of the Federal Tort Claims Act, 28 U.S.C. § 1346.

Based on the Complaint, the Court cannot say that Plaintiff has not stated a claim upon which relief can be granted.

Review of the evidence before the Court presenting the specific circumstances of this case, however, makes it clear that (1) the independent contractor exception bars suit against the United States for any of the alleged acts or omissions of the contractor or subcontractors, and (2) the discretionary function exception bars suit against the United States for any of the alleged acts or omissions of the United States.  Plaintiff has

**U.S. EXHIBIT H**

failed to raise a genuine issue of material fact that would preclude the granting of summary judgment in the instant action.

I.    **Federal Tort Claims Act**

The United States can only be sued to the extent that it has waived its sovereign immunity. Blackburn v. United States, 100 F.3d 1426, 1429 (9th Cir. 1996). The Federal Tort Claims Act ("the Act") "waives the Government's sovereign immunity for tort claims arising out of the negligent conduct of government employees acting within the scope of their employment" "under circumstances where the United States, if a private person, would be liable to the claimant" under applicable law. Id. (citation omitted); 28 U.S.C. § 1346(b). "The Act serves to enhance government accountability, eliminate the need for private bills seeking individual relief, and allocate loss across the federal taxpaying public." Marlys Bear Med. v. United States, 241 F.3d 1208, 1213 (9th Cir. 2001) (citations omitted).

Waiver of liability under the Act is subject to a number of exceptions, among them, the independent contractor exception and the discretionary function exception. See 28 U.S.C. § 2680. Because the United States can only be sued to the extent Congress has waived its sovereign immunity, the exceptions to the Act must be strictly construed. United States v. Orleans, 425 U.S. 807, 814 (1976). Any ambiguities will be construed in favor of

12

**U.S. EXHIBIT H**

immunity.  Lane v. Pena, 518 U.S. 187, 192 (1996).  The United

States bears the burden of proving that an exception to the Act

applies.  Marlys Bear Med., 241 F.3d at 1213; Sigman v. United

States, 217 F.3d 785, 793 (9th Cir. 2000) (citing Prescott v.

United States, 973 F.2d 696, 702 (9th Cir. 1992)).

     A.   Independent Contractor Exception

The independent contractor exception allows the United

States to retain immunity when sued for the negligence of its

independent contractors and subcontractors.  McCall v. United

States, 914 F.2d 191, 195 (9th Cir. 1990); Rooney v. United

States, 634 F.2d 1238, 1243, n.6 (9th Cir. 1980).  Under the Act,

the United States is liable for damage caused by the negligence

of employees of a federal agency, which "does not include any

contractor with the United States." 28 U.S.C. § 2671.  In other

words, the United States may be sued for the negligence of its

employees, but not the negligence of employees of its independent

contractor or subcontractors.

     B.   Discretionary Function Exception

Another exception to the United States' waiver of liability

under the Act is the discretionary function exception, which

excepts from liability:

> Any claim . . . based upon the exercise or performance
> or the failure to exercise or perform a discretionary
> function or duty on the part of a federal agency or an
> employee of the Government, whether or not the

13

**U.S. EXHIBIT H**

discretion involved be abused.

28 U.S.C. § 2680(a).

To determine whether the discretionary function applies, the Supreme Court has established a two-part test.

First, a court must consider whether the action is a matter of choice or judgment for the acting government employee. Senger v. United States, 103 F.3d 1437, 1444 (9th Cir. 1996) (citing Berkovitz v. United States, 486 U.S. 531, 536, 539 (1988)). "An action specifically prescribed by a 'federal statute, regulation, or policy' is not within an agent's discretion and therefore not subject to the exception,'" as the agent would have no choice other than to follow the statute, regulation, or policy. Marlys Bear Med., 241 F.3d at 1213 (quoting Berkovitz, 486 U.S. at 536) (emphasis added). "Discretion may be either affirmatively conferred or tacitly implied." Id. (citing United States v. Gaubert, 499 U.S. 315, 324-25 (1991)). "[T]he presence of a few, isolated mandatory provisions does not transform an otherwise suggestive set of guidelines into binding agency regulations." Sabow v. United States, 93 F.3d 1445 (1996).

Second, a court must consider whether the challenged action involved a policy judgment of the type the discretionary function was designed to shield. Marlys Bear Med., 241 F.3d at 1214; Senger, 103 F.3d at 1444. "The exception is meant to protect

14

**U.S. EXHIBIT H**

'political, social, and economic judgments' that are the unique
province of the Government, not all decisions involving some
discretion." Marlys Bear Med., 241 F.3d at 1214 (quoting
Berkovitz, 486 U.S. at 539). The focus of the analysis is on
"the nature of the actions taken and on whether they are
susceptible to policy analysis." Gaubert, 499 U.S. at 325;
accord GATX/Airloq Co. v. United States, 234 F.3d 1089, 1094 (9th
Cir. 2000). The decision need not be actually grounded in policy
considerations, so long as it is, by its nature, susceptible to
policy analysis. Nurse v. United States, 226 F.3d 996, 1001 (9th
Cir. 2000); accord GATX/Airloq Co., 234 F.3d at 1094. When a
statute or regulation allows a federal employee to act with
discretion, "it must be presumed that the agent's acts are
grounded in policy when exercising that discretion." Gaubert,
499 U.S. at 324; accord GATX/Airloq Co., 234 F.3d at 1094.

The crucial distinction is between acts performed by the
United States in its governmental capacity, and actions performed
by the United States that are not uniquely governmental in nature
and thus do not implicate the special immunity afforded to the
United States as a sovereign. The discretionary function
exception protects the United States against liability for acts
or omissions of the United States or an agent of the United
States, acting in a governmental role.

**U.S. EXHIBIT H**

II.   Theories of Liability

    A.   Alleged Negligence of the Independent Contractor and Subcontractors

The United States is subject to liability for damages "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b). The Act defines "Employee of the Government" as any "employees of any federal agency . . . ." 28 U.S.C. § 2671. "Federal agency" is defined as

> executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

Id. (emphasis added). The United States cannot be held liable for the negligence of its independent contractors. Id.

When the United States has the authority to control the detailed physical performance of the contractor and exercises substantial supervision over the day-to-day activities, however, independent contractors to the United States may qualify as federal agencies for purposes of waiving liability under the Act. Hagy v. United States, 976 F. Supp. 1373, 1377 (W.D. Wa. 1997). The Ninth Circuit has held: There must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee.

16

**U.S. EXHIBIT H**

Laurence v. United States, 59 F.3d 112, 114 (9th Cir. 1995)
(summary judgment properly granted when there was no genuine
issue of fact that the Navy did not exercise day-to-day
supervision over the contractor).

Plaintiff appears to allege, inter alia, negligence on the
part of the contractor and the subcontractors. For the United
States to be held liable for the actions of its contractor or
subcontractors, the United States would have had to exercise
substantial control over the contractor's activities. Without
substantial supervision over the day-to-day operations of the
employees, Plaintiff's claims against the United States for the
negligence of its independent contractor or subcontractors are
barred by the independent contractor exception.

In the Complaint, Plaintiff alleges the United States was in
control of, and conducted regular inspections of the work site,
and either knew or should have known that Plaintiff was working
without adequate safety precautions. (Compl. ¶ 14.) The Court
cannot say that Plaintiff has failed to state a claim upon which
relief can be granted.

Plaintiff, however, has failed to present evidence of the
United States' substantial control over the day-to-day activities
of the project, or evidence that the United States knew of the
unsafe working conditions of Plaintiff.

**U.S. EXHIBIT H**

1.   United States' Right to Monitor and Inspect

The United States' right to monitor or inspect the contractor's work for compliance with the contract specifications does not constitute "control" over its employees and does not create liability for the United States for the alleged negligence of the contractor.  See Restatement (2d) of Torts § 414 (1965); Loque v. United States, 412 U.S. 521, 523-25, 530 (1973); Pershing v. United States, 736 F. Supp. 132 (W.D. Tex. 1990); Hagy, 976 F. Supp. at 1377; Leone v. United States, 910 F.2d 46, 51 (2d. Cir. 1990); Goewey v. United States, 886 F. Supp. 1268, 1276-77 (D. S.C. 1995), aff'd, 106 F.3d 390 (4th Cir. 1997) (table).  Although the United States clearly exercised some degree of general supervision through its agent Rodenhurst, Plaintiff has presented no evidence that the United States exercised substantial supervision over day-to-day responsibilities that would nullify the application of the independent contractor exception.

2.   United States' Ownership of Property or Equipment

The United States' ownership of the property or equipment utilized by the contractor or subcontractors does not establish the requisite control over the detailed physical performance of the contractor's work to render the United States liable.  Brooks v. A.R.&S. Enter., Inc., 622 F.2d 8, 11 (1st Cir. 1980)

**U.S. EXHIBIT H**

(government contractor performing duties on government-owned property and using government-owned equipment is not an employee of the United States); Larsen v. Empresas El Yunque, Inc., 812 F.2d 14 (1st Cir. 1986).

>    3.    United States' Financing of the Operation

The United States' financing of the operations does not constitute the requisite level of control. <u>Orleans</u>, 425 U.S. at 815-16; Frazier v. United States, 481 F. Supp. 645, 647 (N.D. Cal. 1979).

>    4.    United States' Power to Halt the Project

The United States' ability to halt the project, upon contractors' failure to correct an environmental or safety violation, does not constitute the authority to control the detailed physical performance of the contractor. <u>See</u>, <u>e.g.</u>, <u>Lowe</u> v. United States, 611 F.2d 76, 77 (5th Cir. 1980) (Government not liable for injury of employee of subcontractor although "[t]he contract did provide that the Government could notify the contractor of any noncompliance with the safety and health provisions of the contract and act to remedy the failure of the contractor to take corrective measures" and "the contract reveals that safety was the sole responsibility of the contractor").

The Ninth Circuit has held that when the Government has merely reserved inspection rights and required compliance with

**U.S. EXHIBIT H**

applicable regulations, the United States is not liable in tort

for injuries sustained by its contractor's employees.  See

Jeffries v. United States, 477 F.2d 52, 56 (9th Cir. 1973)

(numerous citations omitted).

> 5.    Independent Contractor Exception Bars Suit Against
>       the United States for the Negligence of the
>       Independent Contractor or Subcontractors

Plaintiff has presented no evidence of direct day-to-day

control of the lead paint removal operation by the United States.

Plaintiff's claims against the United States for the alleged

negligence of its contractor and subcontractors are barred by the

independent contractor exception.

The Court now turns to the question of whether the United

States can be held liable for negligence based on its own acts or

omissions, or whether the alleged acts or omissions on the part

of the United States are protected under the discretionary

function exception to the Federal Tort Claims Act.

> B.   Alleged Negligence on the Part of the United States

The discretionary function exception to the Act's waiver of

liability excepts from liability:

> Any claim [against the United States]. . . based upon
> the exercise or performance or the failure to exercise
> or perform a discretionary function or duty on the part
> of a federal agency or an employee of the Government,
> whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  "Whether a challenged action falls within

**U.S. EXHIBIT H**

the discretionary function exception requires a particularized analysis of the specific agency action challenged." GATX/Airloq Co., 234 F.3d at 1094 (citation omitted).

Based on a broad reading of the Complaint, there are four actions taken by the United States that Plaintiff could possibly argue constitute negligence: (1) hiring an independent contractor, (2) delegating safety responsibilities to the independent contractor, (3) retaining oversight authority, and (4) exercising its oversight authority.

Because it is possible that one or more of these actions could subject the United States to liability, depending on the circumstances, the Court cannot say that Plaintiff has failed to state a claim upon which relief may be granted.

As Plaintiff has failed to present any evidence of circumstances that would subject the United States to liability based on its own acts or omissions, however, Plaintiff has failed to raise a genuine issue of material fact as to this issue.

### 1.    Decision to Hire an Independent Contractor

The United States hired the independent contractor, Service Alliance, to perform lead abatement at Hickam Air Force base.

Under the first prong of the discretionary function test, the United States' decision to hire an independent contractor was discretionary, "as no federal statute, regulation, or policy

prescribes [such an] action." GATX/Airloq Co., 234 F.3d at 1094. In fact, in choosing to hire an independent contractor, the United States was engaged in normal military contracting and subcontracting relationships, operating within the Federal Acquisition Regulations. See 48 C.F.R. Ch. 1 et seq. Plaintiff cites to no source proscribing such action, and does not argue that the United States' decision to hire an independent contractor was not discretionary.

Under the second prong of the discretionary function exception, the United States' decision to hire an independent contractor is susceptible to policy analysis. "When established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 at 324; accord GATX/Airloq Co., 234 F.3d at 1094. Plaintiff has failed to overcome the presumption. See, e.g., GATX/Airloq Co., 234 F.3d at 1094.

Moreover, there has been no evidence that the United States' decision to hire an independent contractor was negligent in and of itself.

   2.   **Decision to Delegate Safety Matters to Independent Contractor**

The United States also delegated the safety responsibilities relating to the lead abatement project to the independent

**U.S. EXHIBIT H**

contractor.  The contract included extensive provisions governing safety relating to the removal of lead paint.  One provision required that special protective clothing be furnished to the workers.  (Ex. 1 at ID 00216.)  To ensure the independent contractor met the requirements established, the United States also included a provision in the contract requiring that the independent contractor hire an Industrial Hygienist to certify the training of personnel involved in the lead-based paint removal work, to inspect and directly monitor the work, and to review and certify lead containing paint removal plan for conformance to the applicable standards.  (Ex. 1 at ID 00214-15, §§ 2A.2.4, 2A.2.4.1.)

The United States' decision to delegate safety matters to the independent contractor was a matter of choice or judgment, not prescribed by federal statute, regulation, or policy, and was susceptible to policy analysis.  "The law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so."  Andrews v. United States, 121 F.3d 1430, 1440 (11th Cir. 1997).  "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory policy of the most basic kind."  United States v. S.A.

**U.S. EXHIBIT H**

Empresa de Viacao Aerea Rio Grandense (Variq Airlines), 467 U.S. 797, 819-20 (1984). "[T]he discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors." Andrews, 121 F.3d at 1440.

In Reed ex rel. Allen v. U.S. Dept. for Interior, the Bureau of Land Management issued a permit for a festival to take place on federal land. 231 F.3d 501, 506 (9th Cir. 2000), cert. denied __ U.S. __, 121 S. Ct. 1957 (2001). Plaintiff, an attendee of the festival, sustained permanent injuries when a truck ran over the tent in which he was sleeping at the festival. Id. Plaintiff alleged that the United States was negligent in failing to monitor the festival after 10:00 p.m. Id. The Ninth Circuit held that the United States' actions fell within the discretionary function exception, where no regulation required 24-hour monitoring, and the decision as to the nature and extent of the monitoring involved both discretion on the part of the Bureau of Land Management employees and the balancing of public policy concerns such as public access, safety, resource allocation, and the environment. Id.

The recent Ninth Circuit case Marlys Bear Med., discussed by the parties in their supplemental briefs, is not to the contrary. In that case, the United States hired an independent contractor

24

**U.S. EXHIBIT H**

to assist in the timbering operations on Indian lands.  241 F.3d
at 1212.  The independent contractor hired was not qualified to
ensure the safety of the workers.  Id. at 1212, 1217, 1218.  The
Bureau of Indian Affairs was "the only organization on the
reservation with the appropriate safety expertise."  Id. at 1217.
The Bureau of Indian Affairs had "virtually complete control of
the timbering operations on Indian lands."  Id.  And the United
States failed to require any safety measures or training.  Id.
Given these unusual circumstances, the court concluded that the
United States' "failure to require safety measures or training
was not a policy judgment that Congress intended to protect from
FTCA liability."  Id.  In other words, the second prong of the
discretionary function exception analysis, that the decision be
susceptible to policy analysis, was not satisfied.

Here, Plaintiff has not alleged that the independent
contractor was not qualified to ensure the safety of the workers,
that some government agency was the only entity appropriately
qualified, or that the United States failed to require
appropriate safety measures or training in the contract.
Plaintiff has not alleged that the United States has some special
fiduciary duty to the contractors or subcontractors or their
employees.  Neither is there any evidence to suggest that George
Rodenhurst, the United States' inspector, or any other United

States employee, was actually aware of any acute, immediate

danger regarding the Plaintiff or other employees of the

independent contractor or subcontractors.  In the instant case,

the United States' decision to delegate safety responsibilities

to the independent contractor was within its discretionary

powers, was susceptible to policy analysis, and is protected by

the discretionary function exception of the Federal Tort Claims

Act.  As in Reed, and unlike the facts in Marlys Bear Med., no

unusual circumstances exist to overcome the presumption that the

United States' decision to delegate safety matters to the

independent contractor was "grounded in policy."  Gaubert, 499 at

324.

> 3.    Retention of Oversight Authority Relating to
>          Safety Requirements

The United States cannot be held liable simply because it

retained the right to require adherence to safety regulations.

See, e.g., Lowe v. United States, 611 F.2d 76 (5th Cir. 1980)

(holding that under the contract, safety was the sole

responsibility of the contractor, and the Government could not be

liable simply because it retained the right to require adherence

to safety regulations) (citing Fisher v. United States, 441 F.2d

1288, 1292 (3d Cir. 1971)); Johnston v. United States, 461 F.

Supp. 991, 993 (N.D. Fla. 1978).  See also Reed, 231 F.3d at 506

(discretionary decisions made as to the precise manner in which

**U.S. EXHIBIT H**

an agency of the United States should monitor permitted events on

federal lands falls within the discretionary exception).

Retaining oversight authority "allow[s] the government's

employees to exercise choice and discretion" and does not render

the discretionary function inapplicable.  Domme v. United States,

61 F.3d 787, 791 (10th Cir. 1995).

Under the contract, the United States could inform the

contractor of any safety violations, and demand that they be

corrected.  Such an ability is protected by the discretionary

function exception, as the very acts of reporting or demanding

correction of a safety violation, or halting the project, require

the exercise of discretion and are susceptible to policy

analysis.  Valdez v. United States, 56 F.3d 1177, 1180 (9th Cir.

1995); Blackburn, 100 F.3d at 1434.

> 4.    **Failure to Properly Perform Oversight**
>       **Responsibilities Relating to Safety Requirements**

Where the United States delegates safety responsibilities to

an independent contractor, allegations that the United States

failed to ensure a contractor's compliance with safety

regulations "is essentially a claim for negligent supervision."

Vallier v. Jet Propulsion Lab., 120 F. Supp. 2d 887, 914 (C.D.

Cal. 2000).  The United States is insulated from suit for

negligent supervision.  Id.

In Vallier, the court held that the discretionary function

27

**U.S. EXHIBIT H**

exception bars suit against the United States when the violations
alleged were of standards contractually imposed upon the
contractor, and noted: "many courts have found that the
government's negligent supervision or even total failure to
supervise are discretionary decisions protected by the
discretionary function exception." Id.; see also Kirchmann v.
United States, 8 F.3d 1273, 1277-78 (8th Cir. 1993) ("If arguably
based on policy considerations, both negligence in supervising a
contractor and the failure to supervise a contractor at all are
included in the decisions protected by the discretionary function
exception"); accord In re Consolidated United States Atmospheric
Testing Litig., 820 F.2d 983, 995-96 (9th Cir. 1987), cert.
denied sub. nom., Konizeski v. Livermore Labs., 485 U.S. 905
(1988); Jones v. United States, 698 F. Supp. 826, 833 (D. Haw.
1988); Hagy, 976 F. Supp. at 1378.

In the instant case, the United States did not have a duty
to ensure the safety of the workers. The United States delegated
all of the safety responsibilities, by contract, to the
independent contractor. Rodenhurst was responsible for
monitoring the progress of the contractor's work, not the safety
of the contractor's workers. (Rodenhurst Decl ¶¶ 4, 5, Ex. 6,
attached to Gov. Mot.) Plaintiff has presented no evidence that
George Rodenhurst, the United States' inspector, or any United

28

**U.S. EXHIBIT H**

States employee, was aware of any acute, immediate danger regarding the Plaintiff or other workers. The discretionary function exception and caselaw protect the United States from liability for what amounts to a claim for negligent supervision.

    5.    **Discretionary Function Exception Bars Suit Against the United States for Negligence**

To the extent that Plaintiff sues the United States for negligence on the part of the United States, Plaintiff's claims are barred by the discretionary function exception. The United States is not liable for its exercise of discretion in hiring an independent contractor to perform the lead paint removal on Hickam Air Force Base, in delegating safety responsibilities to the independent contractor, in retaining or in exercising oversight authority on the project. These decisions were matters of choice and judgment, not specifically prescribed by a federal statute, regulation, or policy, and were susceptible to governmental political, social, and economic judgments.

    6.    **Hawaii Law**

Plaintiff argues that the United States is liable for negligence under several theories of Hawaii state law. Plaintiff bases the claims on language in the Federal Tort Claims Act that the United States shall be liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or

29

omission occurred." 28 U.S.C. § 1346(b). Here, however, any liability on the part of the United States for negligence is barred by the discretionary function exception. The United States, therefore, has not waived its sovereign immunity, and the Court does not have subject matter jurisdiction to reach the merits of Plaintiff's state law theories.

In Reed, the Ninth Circuit makes clear that the general rule that the United States can be sued and may be liable under circumstances where the United States, if a private person, would be liable under the relevant state law, is limited by the discretionary function exception:

> [T]he government can be sued and may be liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). However, that waiver of immunity is then limited by the "discretionary function" exception, 28 U.S.C. § 2680(a), which is applicable to this case.

231 F.3d at 503.

The cases cited by Plaintiff are not relevant to the instant case. Among cases cited by Plaintiff, it was held that no exception to the Federal Tort Claims Act applied, so that it was proper to consider state law theories of relief. See, e.g., Marlys Bear Med., 241 F.3d 1208 (reaching the issue of whether the United States is liable under state law only after it

30

**U.S. EXHIBIT H**

determines that the discretionary function exception does not apply to the facts of the case).

In other cases relied upon by Plaintiff, the issue of an exception to the Federal Tort Claims Act was never raised. In Chaffin v. United States, for example, while the court held that a genuine issue of material fact existed as to the liability of the United States for negligence under several theories of California state law, the court made clear that while reaching the state law theories, it did not address the issue of the effect of any exception to the Federal Tort Claims Act on plaintiff's state law claims: "In citing the Restatement [adopted by California courts], we express no opinion as to whether any of the exceptions to the FTCA's waiver of government immunity may preclude a cause of action for negligence against the United States . . . ." 176 F.3d 1208, 1214 (9th Cir. 1999). The issue of any exception to the Federal Tort Claims Act was not raised in McMillan v. United States, 112 F.3d 1040 (9th Cir. 1997) or Barron v. United States, 654 F.2d 644 (9th Cir. 1981). The Hawaii state court case Makaneole v. Gampon discusses Hawaii law with respect to negligence, but does not involve the Federal Tort Claims Act or the United States. 70 Haw. 501, 504 (1989).

In none of the cases relied upon by Plaintiff did the courts find that an exception to the Federal Tort Claims Act applied.

The courts, therefore, could reach the merits of the plaintiffs' state law claims.

Plaintiff's claims against the United States for negligence, either on the part of the independent contractor, subcontractors, or on the part of the United States itself, are barred by the independent contractor and discretionary function exceptions of the Federal Tort Claims Act. As the United States has not waived its sovereign immunity, the Court lacks subject matter jurisdiction over the instant case.

### CONCLUSION

Pursuant to the foregoing, IT IS HEREBY ORDERED that the Defendant United States' Motion to Dismiss is DENIED, and the Defendant's Motion for Summary Judgment is GRANTED.

The Complaint is DISMISSED.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, November 5, 2001.

HELEN GILLMOR
United States District Judge

Tvni v. United States, Civil No. 99-00907 HG-KSC, Order Denying Defendant United States' Motion to Dismiss and Granting Defendant's Motion for Summary Judgment