Of Counsel:
GALIHER DeROBERTIS ONO
Law Corporations

| | |
|---|---|
| GARY O. GALIHER | 2008 |
| L. RICHARD DeROBERTIS | 3179 |
| JEFFREY T. ONO | 2763 |

610 Ward Avenue, Second Floor
Honolulu, Hawaii  96814-3308
Telephone:  (808) 597-1400
Facsimile:  (808) 591-2608

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE:<br>HAWAII FEDERAL ASBESTOS CASES<br><br>This Document Applies To:<br><br>MERCY S. BYINGTON, individually and as Personal Representative of the Estate of JIMMY F. BYINGTON, deceased, EVELINE SHORT, and BEVERLY ANN HAUOLI ANI, as Prochein Ami for MARGARET BARBARA HA'EHA'E ANI, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL NO.  CV04 00661 REJ BMK<br><br>PLAINTIFFS' CONCISE STATEMENT OF FACTS; EXHIBITS "A" – "D"; CERTIFICATE OF SERVICE<br><br><br><br><br>Judge:  Hon. Robert Jones |

D:\04499.1\pleading\federal\et concise stmt of facts 11 27 06.doc

## **PREAMBLE**

Plaintiffs do not dispute Defendant United States of America's ("USA") paragraphs 1 – 6, 10 – 13, 15 and 21.

As more fully explained in Plaintiffs' Concise Statement of Facts listed below, Plaintiffs dispute USA's paragraph 7 in that Air Force Regulation 91-42 ("AFR91-42") required the United States Air Force ("USAF") and Hickam Air Force Base ("Hickam AFB") chief civil engineer to be responsible for asbestos abatement on all USAF base property.

Plaintiffs dispute paragraphs 8 and 9 for the same reason.

Plaintiffs dispute paragraph 14 in that as explained below, the HIANG base asbestos management program was not consistent with AFR91-42 in that it allowed friable asbestos to remain in place when it should have been either removed or repaired.

Plaintiffs dispute paragraph 16 in that AFR91-42 imposed a duty on the USAF and Hickam AFB "to address any dangers posed by the asbestos in those buildings."

Plaintiffs state that paragraph 17 is undisputed to the extent that prior to 1992 there was no requirement for HIANG to have formed an asbestos program;

but Hickam AFB did have a requirement for 1992 to remove or repair the flaking asbestos in the buildings leased to HIANG as per AFR91-42.

Plaintiffs dispute paragraph 18 in that prior to 1992 Hickam AFB cooperated with HIANG for the monitoring and testing of the Hickam AFB buildings leased to HIANG.

Plaintiffs dispute paragraph 19 to the extent that it implies that there was no responsibility by Hickam AFB for state worker health and safety asbestos issues while working on the Hickam AFB buildings leased to HIANG.

With respect to paragraph 20, Plaintiffs do not dispute that HIANG provided notice to state employees of the presence of asbestos, but do dispute that proper training of asbestos safety was provided to state employees, including Jimmy Byington.

With respect to paragraph 22, Plaintiffs admit that the raw asbestos air tests taken did not exceed state or federal maximum contamination levels but this is irrelevant because AFR91-42 provides that friable asbestos was to be removed or repaired and air samples were not an exception to this mandate. Moreover, good industrial hygiene practices recognized by Hickam AFB safety officials required flaking asbestos to be removed and not to rely upon air samples.

## PLAINTIFFS' CONCISE STATEMENT OF FACTS

|    | Facts | Evidentiary Support |
|----|-------|---------------------|
| 1. | Air Force Regulation 91-42 was effective December 21, 1988 and presumed that all damaged asbestos material is hazardous because of its potential to release asbestos fibers. | Exhibit A |
| 2. | AFR91-42 mandated that all presumptive asbestos hazards be eliminated by either repairing or removing damaged asbestos containing material. | Exhibit A |
| 3. | Air Force Instruction 32-1052 was effective March 22, 1994 and superseded AFR 91-42 and contained the same mandates. | Exhibit B |
| 4. | Hickam AFB through its Bioenvironmental Engineering Services conducted Air Sample monitoring in Building 3400; from at least 1981 to 1997. | Exhibit C at USAF01-00284 (paragraphs 2 & 3); at USAF01-0488 (paragraph 3); at USAF01-00283 (paragraph 3); at USAF01-00222; at USAF01-00207 (paragraph 1) |
| 5. | Hickam AFB was aware since at least 1981 that HIANG personnel reported that "small pieces of insulation were falling to the hangar floor" in Bldg. 3400 and this was up to 4% chrysotile asbestos. | Exhibit C at USAF01-00284 (paragraph 2) |

3

| 6.  | HIANG reported in a December 2, 1982 memo cc'd to Hickam AFB that "since 1978 pieces of insulation have been falling resulting in a possible asbestos exposure problem to personnel working in the hangar." | Exhibit C at USAF01-0488 (paragraph 2) |
|---|---|---|
| 7.  | The Hickam AFB Bioenvironmental Engineer (BEE) would not assign a risk assessment code to hangar 3400, despite the falling asbestos. | Id. (paragraph 4) |
| 8.  | In a 20 Jan 1983 memo the Hickam BEE (Webb) recommended a study to determine if encapsulation of the asbestos in Bldg 3400 was an option. | Exhibit C at USAF01-00283 (paragraph 3) |
| 9.  | In a 4 Sept 1986 memo, the new BEE (Martinez-Perez) stated "that air sampling should not be used as a gauge for treatment" of Bldg. 3400's asbestos problems. | Exhibit C at USAF01-00453 to 00454 (paragraph 3) |
| 10. | This 4. Sept 1986 memo "confirmed the presence of Chrysotile Asbestos in the spray-on material. Material is in a friable condition and any agitation would release fibers in the air." | Exhibit C at USAF01-000453 (paragraph 3) |
| 11. | The 22 Oct 1987 memo from the BEE (Martinez-Perez) documents the BEE's objection to mere encapsulation since the encapsulation was only guaranteed for 2 years. | Exhibit C at USAF01-0019 |
| 12. | This reason for the BEE's objection to encapsulation versus abatement was reiterated in the July 11, 1988 memo. | Exhibit C at USAF01-00322 |

| 13. | The 10 April 1990 memo from the HIANG requested "an asbestos hazard assessment" from the Hickam BEE "to justify the cost" of the asbestos abatement project within Bldg 3400. | Exhibit C at USAF01-00276 (paragraph 1 & 2) |
|---|---|---|
| 14. | The new BEE, Major Payne, who replaced Lt. Col. Martinez-Perez refused on April 30, 1990 because he did not consider the asbestos in the hanger of Bldg. 3400 to be friable. | Id. (see bottom of page) |
| 15. | A re-evaluation meeting took place on August 8, 1990 whereby HIANG asked the Hickam BEE to clarify his position in light of past recommendations of the prior Hickam BEE. | Exhibit C at USAF01-00272 (paragraph 3a) |
| 16. | At this meeting, Major Payne "responded that . . . health concerns cannot be used as justification for the encapsulation or complete removal of the hanger asbestos insulation." | Id. at paragraph 3b |
| 17. | Major Payne's justification was that the asbestos was "not" friable, in that although you could break it up by hand the insulation is rather hard. | Id at paragraph 3b |
| 18. | The EPA's 1985 Guidance for Controlling Asbestos-Containing Materials in Buildings and 40 C.F.R § 61.141 defined "friable" as any material containing more than 1% asbestos that hand pressure can crumble, pulverize, or reduce to powder when dry. | Exhibit D at pp. S-1 & C-1 |

5

| 19. | The 28 May 1991 asbestos sampling report for Bldg. 3400 states the material was "flaking off and falling to the floor" and was 15% chrysotile asbestos. | Exhibit C at USAF01-00265 |
|---|---|---|
| 20. | The 12 Aug 1997 memo states July 1997 bulk samples of dust and debris from the rafters of Bldg 3400 was 30% to 50% chrysotile asbestos. | Exhibit C at USAF01-00222 |
| 21. | The conclusion to this 12 Aug 1997 memo states "air sampling is not adequate for determining the intengrity of the plaster" and "the plaster is releasing chrysotile asbestos fibers." Although "airborne concentrations are low" as per air sample results. | Exhibit C at USAF01-00223 (paragraphs a & c) |
| 22. | A June 25, 2001 email from M.Sgt Cynthia Wiederholt 15 ADS/SGGB states "it's still not a good industrial hygiene practice to live with ACM dropping from the ceiling back in 1984 or now. The situation has the potential to be a health hazard, and . . . a health hazard does not need to exist to take action to either manage it or remove it." | Exhibit C at USAF01-00211 |
| 23. | A June 22, 2001 email from Jody Ann Murata states: "I visited B. 3400 this morning and it looks like the situation is the same as it was back in 1991. There was ceiling material on the floor, and the personnel sweep it up every morning and put it in the trash. The material also collects in nearby drains, which are cleared out using a leaf blower. The wind blows through the hangar which may facilitate the material flaking off the ceiling. | Exhibit C at USAF01-00212 |

| | | |
|---|---|---|
| 24. | The 10 July 2001 memo from the new BEE, Major Lee, states in part: "The ACM is now flaking to the hangar floor" and "the ACM is friable." | Exhibit C at USAF01-00207 |

Respectfully submitted,

/s/ L. Richard DeRobertis
GARY O. GALIHER
L. RICHARD DEROBERTIS
JEFFREY T. ONO
DIANE T. ONO
Attorneys for Plaintiffs

## CERTIFICATION

Pursuant to Local Rule 7.5(e) and 56.1(d) for the United States District Court in the District of Hawaii, I ceritify that this Preamble and Concise Statement of Facts does not exceed the word limits of this rule, and the total word count is 1,279.

Respectfully submitted,

/s/ L. Richard DeRobertis
L. Richard DeRobertis, Esq.