EDWARD H. KUBO, JR. (#2499)
United States Attorney
District of Hawaii
R. MICHAEL BURKE (#1902)
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850-6100
Telephone: (808) 541-2850
PETER D. KEISLER
Assistant Attorney General
Civil Division
C. FREDERICK BECKNER, III
Deputy Assistant Attorney General
J. PATRICK GLYNN
Director, Environmental Torts
DAVID S. FISHBACK
Asst. Dir., Environmental Torts
STEVEN M. TALSON
Senior Trial Counsel, Envir. Torts
U.S. Department of Justice
P.O. Box 340
Washington, D.C. 20044
Telephone: (202) 616-4229
Facsimile: (202) 616-4473
E-mail: steven.talson@usdoj.gov
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE<br>HAWAII FEDERAL ASBESTOS CASES<br><br>This Document Applies To:<br><br>MERCY S. BYINGTON,<br>individually and as Personal<br>Representative of the Estate<br>of JIMMY F. BYINGTON,<br>deceased, EVELINE SHORT, and<br>BEVERLY ANN HAUOLI ANI, as<br>Prochein Ami for MARGARET<br>BARBARA HA'EIHA'E ANI, a<br>minor,<br><br>           Plaintiffs,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br>           Defendant. | CIVIL NO. 04-00661 REJ-BMK<br><br>TABLE OF CONTENTS; TABLE OF<br>AUTHORITIES; REPLY MEMORANDUM<br>IN SUPPORT OF DEFENDANT UNITED<br>STATES OF AMERICA'S MOTION TO<br>DISMISS, OR IN THE<br>ALTERNATIVE, FOR SUMMARY<br>JUDGMENT; EXHIBIT I;<br>CERTIFICATE OF SERVICE |

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
UNITED STATES OF AMERICA'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiffs' response to the United States' dispositive motion in this case is based entirely upon a factual assumption that is **directly contradicted** by the Air Force Regulation upon which Plaintiffs base their argument. As we show below, Plaintiffs' argument rests on the proposition that the United States Air Force (USAF) violated mandatory provisions of Air Force Regulation 91-42, Air Force Facility Asbestos Management (AFR 91-42), dated December 21, 1988. There are a number of flaws with Plaintiffs' analysis, but the principal defect is that the cited provisions of AFR 91-42 are **not** mandatory. Rather, the first paragraph of AFR 91-42 explicitly states that it "contains **optional guidance** to help the base civil engineer (BCE) develop and administer" plans to deal with asbestos (emphasis added). See Opp. Brief, Ex. A at 1.

Because the guidelines cited by Plaintiffs were optional, they cannot be deemed to be mandatory – a necessary requirement to overcome the first prong of discretionary function exception analysis, as set forth by the Supreme Court. See U.S. Brief at 10-11. And because decisions about whether to deal with potential asbestos hazards by removal, by encapsulation, or by air monitoring are certainly "susceptible to policy analysis," the second prong of discretionary function exception analysis is satisfied, as well.

Moreover, because the undisputed evidence demonstrates that matters of building safety were left by the USAF to the Hawaii

Air National Guard (HIANG) and AFR 91-42 applies, <u>inter</u> <u>alia</u>, to the "Air National Guard," even if there were violations of provisions of that regulation that could somehow be deemed mandatory, such violations would have been the responsibility of the HIANG, not the USAF.

In the government's opening brief, we showed that, in licensing various facilities at Hickam AFB to HIANG, the USAF left responsibility for all health and safety matters in those facilities with the HIANG. In support, the United States provided the sworn declaration of Colonel Compton of the HIANG, who was the Asbestos Program Officer and Environmental Coordinator during the relevant time, in which he stated that the HIANG was responsible for asbestos management and worker health and safety while working in the facilities. U.S. Brief at 6-7. In response, Plaintiffs ignore this delegation of responsibility to the HIANG, fail to address or rebut Colonel Compton's declaration, and, instead, argue that the USAF lacked discretion because it violated **mandatory and specific requirements** of AFR 91-42. Plaintiffs argue that, pursuant to AFR 91-42, the United States had no discretion other than to encapsulate or remove asbestos-containing material in the licensed facilities, notwithstanding its delegation of responsibility to the HIANG.

The fatal flaw in Plaintiff's argument, however, is that AFR 91-42 did **not** set forth any mandatory and specific requirements regarding how to address the presence of asbestos in an Air Force facility, either for the USAF or the HIANG. Rather, as noted

above, the preamble to AFR 91-42 states that AFR 91-42 contains **"optional guidance"** (emphasis added) to aid civil engineers in developing and administering plans to address asbestos in the workplace. Opp. Brief, Ex. A at 1. Consequently, the USAF was not compelled to take the steps that Plaintiffs assert that it had no choice but to take, and this fact eliminates the essential basis for Plaintiffs' opposition to the government's assertion of the discretionary function exception.

I.  THE EVIDENCE SHOWING THAT THE UNITED STATES EXERCISED POLICY-BASED DISCRETION IN LEAVING ASBESTOS MANAGEMENT ANDS WORKER SAFETY TO THE HAWAII AIR NATIONAL GUARD REMAINS UNCONTROVERTED.

Plaintiffs fail to present any affirmative evidence to controvert the facts established in the government's opening brief (U.S. Brief at 3-7). Those facts establish that in 1975, when the USAF first licensed facilities at Hickam AFB to the HIANG, it required the HIANG to assume responsibility for management of asbestos in those facilities, as well as for worker health and safety. In support, the United States submitted competent and uncontroverted evidence showing that the actions for which Plaintiffs seek to hold the United States liable were, in fact, duties and responsibilities assumed by the HIANG. Specifically, the United States showed (See U.S. Brief at 3-7 for citations to exhibits) that, at all times relevant here, that is from November, 1989 until 1994:

1) The buildings in which Mr. Byington worked at Hickam AFB were licensed by the USAF to the State of Hawaii, for use by the HIANG.

2) Pursuant to the 1975 licensing agreement, the responsibility to manage the asbestos in the buildings licensed to the HIANG, and to provide HIANG state employees with a "safe place of employment," rested with the HIANG (Mr. Byington's employer), and not the United States.

3) The USAF-HIANG licensing agreement in effect during the time in which Mr. Byington worked for the HIANG imposed upon the HIANG responsibility for the maintenance and repair of the licensed premises.

4) The USAF did not assume any responsibility for the safety of HIANG's state employees such as Mr. Byington.

5) The HIANG developed an Asbestos Management program in accordance with AFR 91-42, and appointed HIANG officers to operate and oversee the program.

6) Nothing in AFR 91-42 established any mandatory and specific requirements with respect to how to deal with asbestos for the USAF or the HIANG.

7) Any responsibility to inform Mr. Byington about the presence of asbestos in the licensed facilities, and any responsibility to address any dangers posed to workers such as Mr. Byington, by the asbestos in those buildings, rested solely with the HIANG.

8) By the express language in the HIANG Asbestos Management Plan, the HIANG's stated objective was "to ensure that the health and welfare of all base personnel are protected from the potentially harmful effects of asbestos containing material."

See U.S. Brief, Ex. E at 1, ¶ 1.2.  In addition, the HIANG provided notice to its employees of the presence of asbestos in HIANG facilities, and also provided training to those workers on asbestos safety.

    9)  The HIANG also monitored and tested the air in the buildings where Mr. Byington worked, and there never was a single test result showing the presence of asbestos in excess of any state or federal regulatory limit.

    The facts show that the HIANG maintained close liaison with the USAF on the asbestos issue, and often sought its advice or assistance.  On several occasions, USAF personnel made recommendations to the HIANG that no action need be taken so long as tests for asbestos in the air were below the accepted threshold limit value (and there is no dispute that all of the testing during Mr. Byington's employment were below that level); and in doing so, they were not constrained by any mandatory and specific self-imposed obligation.  Moreover, the USAF's recommendations to the HIANG were advisory.  Consequently, the HIANG was free to take a different approach if it believed that, pursuant to its contractual obligations, there was a better way to balance potential safety risks and efficiency or to ensure the health and safety of its workers.[1]  While AFR 91-42 applied to

---

[1] The correspondence between USAF and HIANG personnel contained in Opp. Brief, Ex. C, shows that in January 1983, Lt. Col. Webb, USAF, recommended that the HIANG consider if encapsulation was an option in the future; but that since the information provided by the HIANG showed that there was no present danger, he further recommended that the HIANG monitor the
(continued...)

the HIANG, the substantive provisions of that regulation were

---

[1](...continued)
air until asbestos levels reached one-half the permissible level, at which point he believed that "a project for complete removal should be initiated." USAF01-00283.  By September 1986, the HIANG asked the USAF to review the HIANG's plan to encapsulate the asbestos in building 3400.  USAF01-00453-54.  In a October 22, 1987 letter, Lt. Col. Martinez-Perez, USAF, advised the HIANG of his concerns with encapsulation, contra to Lt. Col. Webb's initial recommendation.  USAF01-00279.  Lt. Col. Martinez-Perez's concerns were noted in a Preliminary Proposal dated January 21, 1988.  USAF01-00334.  On February 2, 1988, the National Guard Bureau denied funding for the hangar project, asking for a re-submission of the design proposal that incorporated all review comments.  USAF01-00333.  In a handwritten annotation to that letter, Lt. Col. Martinez-Perez stated that he and Lt. Blazicko attended a meeting, apparently with the HIANG, and noted "we recommend removal and replacement of the material.  But we told them that they would have to make decision (sic) on how they wanted to spend the money."  Id.  A March 10, 1988, letter (USAF01-00329) shows that, while the major repair or encapsulation project was still being debated, Lt. Col. Martinez-Perez recommended to the HIANG that they repair any damaged asbestos in the hangar.  The record is silent until April 10, 1990, when the HIANG wrote that it was redesigning its asbestos abatement project, and asked the USAF for a hazard assessment. USAF01-00276.  In a typed reply memo on the bottom of that letter, Major Payne, USAF, replied that he did not feel the asbestos required removal, based on the favorable air sampling and "recommended" management in place, which could include encapsulation or spot repair.  In a July 27, 1990, letter (USAF01-00274), the HIANG requested yet another review in which pros and cons of different approaches were set forth, but which told the USAF that "there was no immediate hazard from airborne asbestos."  Finally, on August 8, 1990, the parties met and asked Major Payne to explain his recommendations.  USAF01-00272-73. Major Payne explained that since air testing showed no health threat, and other experts agreed with him, he felt the HIANG should only proceed if it had the funds for the work, and wanted to avoid future problems.  Mr. Ito, the HIANG Civil Engineer, concluded that "given [Major Payne's] knowledge of the history of the material and its present condition, these are his recommendations."  Id. (emphasis added).  Nothing in these recommendations prevented the HIANG from repairing any damaged asbestos in the hangar, or taking alternative action to protect its workers' safety.

6

merely "optional guidelines;" thus, the HIANG was free to follow its own judgment as to how to handle asbestos in Building 3400. If the HIANG did not agree with the local USAF recommendations, it was free to take a different route or abandon its license. But, at bottom, it does not matter whether the USAF or the HIANG was the final arbiter of how to respond to the presence of asbestos, for the response taken was **not** constrained by any mandatory obligation and the actions of the United States were susceptible to, and clearly based upon, policy considerations of the type that Congress intended, and courts have found, fall within the ambit of protected government discretion.

     Plaintiffs fail to refute these facts. The bulk of Plaintiffs' opposition is a lengthy series of selective excerpts, taken from government documents, that are misleading or irrelevant for several reasons:

     1) First, many of these documents are dated before or after the relevant time at issue in this litigation, which is from November 1989 until 1994, when Mr. Byington worked at the HIANG facilities.

     2) Second, these documents fail to controvert any of the relevant facts that show the HIANG was responsible for workplace asbestos management and worker safety.

     3) Third, Plaintiffs' assertion that it is "not true" that the USAF "delegated asbestos abatement decisions" to the HIANG (Opp. Brief at 1), is premised on the unfounded assumption that, since the USAF provided advice to the HIANG, and since the HIANG

had sought funding to take certain steps, there was no delegation. Rather, as shown at U.S. Brief at 3-7, the USAF left to the HIANG the responsibility for managing asbestos in the workplace and for protecting workers' safety while working in the facilities.

    4) Finally, as noted above, the plain language of the preamble to AFR 91-42 states that the regulation is applicable to, <u>inter</u> <u>alia</u>, the Air National Guard, and that it contains **"optional guidance** to aid civil engineers in developing and administering plans to address asbestos in the workplace" (emphasis added). It is axiomatic that language expressly designated as "optional guidance" cannot constitute both a mandatory and specific requirement, violation of which is required to remove government discretion. <u>See</u>, e.g., <u>Aragon v. United States</u>, 146 F.3d 819, 824-25 (10th Cir. 1998) (where a USAF manual states that it is "intended for guidance," it cannot be viewed as eliminating the discretion of USAF personnel.)

    Additionally, AFR 91-42 states that it "applies to all organizations that have civil engineering responsibilities, including the Air Force Reserve and Air National Guard." <u>Id.</u> As documents collected in Exhibit C to the Opp. Brief show, the HIANG had a Base Civil Engineer, Captain Alvin Satogata, as well as contracting and engineering officers such as Captain Matsuda and Mr. Jonathan S. Ito. These HIANG employees were heavily

Case 1:04-cv-00661-REJ-BMK    Document 26    Filed 12/15/2006    Page 10 of 20

involved in making decisions about the HIANG asbestos management program, including worker safety.[2]

The HIANG was responsible for worker safety in the licensed facilities from 1975 on.  When AFR 91-42 was made effective in December 1988, it simply set forth "optional guidance" for the HIANG and its engineering staff, and did not create any mandatory and specific requirements.  Plaintiffs' failure to acknowledge or explain how this plain language does not eviscerate their argument is fatal to their challenge to prong one of the government's discretionary function exception argument; and Plaintiffs' failure to explain how the USAF decision to leave safety matters to its licensee was not "susceptible to policy analysis" (United States v. Gaubert, 499 U.S. 315, 325 (1991)) is

---

[2] The difficult policy considerations facing the HIANG are reflected in a memorandum for the record, dated February 27, 1988, written by Captain Satogata, the HIANG civil engineer, attached hereto as U.S. Exhibit I.  Captain Satogata summarized a meeting of contractor, HIANG, and USAF personnel concerning the asbestos in Building 3400, the hangar where Mr. Byington worked. In that memorandum, he noted various policy issues facing the HIANG, including that the cost of encapsulating the asbestos in the hangar ($500,000), the cost of removal and use of new fire retardant ($1,250,000), and the environmental threats to use of encapsulant (humidity, wind).  Ironically, the encapsulant itself contained 3-6% asbestos, which Captain Satogata noted "is not considered hazardous.  The various air sampling tests show minimal readings.  **Technically, we are doing everything we can legally and covered/required by law.**"  U.S. Ex. I at 1. (emphasis added).  Captain Satogata also noted that Lt. Col. Martinez-Perez "mentioned that he is aware of the non-hazardous condition of the insulation. . . ." Id. at 2.  The HIANG also was concerned that a major asbestos remediation project would require closure of the hangar, which would adversely impact the HIANG's planned conversion to F-15 fighters.  Opp. Brief, Ex. C at USAF01-00281. In all instances, the USAF made recommendations that the HIANG was free to accept or reject, and decisions as to how to proceed were not governed by any self-imposed specific and mandatory obligations.

fatal to any challenge to prong two of the government's discretionary function exception argument.

II. THE UNITED STATES DID NOT IMPOSE ANY MANDATORY AND SPECIFIC REQUIREMENTS ON ITSELF, NOT DID IT RETAIN ANY DUTY FOR THE HAWAII AIR GUARD'S EMPLOYEES.

Plaintiffs' argument (Opp. Brief at 8-22) that the facts show that the USAF retained authority over asbestos abatement in the HIANG facilities, and thus, there was no issue of delegation or assumption of responsibility for such matters by the HIANG is without merit.  Many of the documents Plaintiffs rely upon pre-date or post-date the 1989-94 period in which Mr. Byington worked for the HIANG in its facilities.  To the extent that they are relevant, they only show that the HIANG Base Civil Engineers maintained contact with their USAF counterparts, and sometimes asked them to assist them with air testing, review of plans, and proposals.

In addition, many of the excerpts in Plaintiffs' brief are actually taken from HIANG documents or personnel.  See, e.g., Opp. Brief at 10-11.  Where USAF personnel did provide comments or suggestions, their advice to the HIANG was predicated with terms such as "I recommend" (Opp. Brief at 11, 16, 18), or "consideration should be given" (Opp. Brief at 10).  Clearly, authority and responsibility for the asbestos management program rested with the HIANG (Opp. Brief at 15).

More importantly for this case, this is a personal injury/wrongful death action on behalf of a state employee of the HIANG.  Nothing in Plaintiff's brief controverts the HIANG's own

10

assertion, set forth in Colonel Compton's declaration (U.S. Brief, Ex. F), that the HIANG was responsible for its workers' health and safety. <u>Id.</u> at 1, ¶ 5.  Regardless of whether the HIANG decided to undertake a massive project such as asbestos removal or encapsulation in the hangar, if it felt that the presence of asbestos or asbestos containing materials in **any** if its facilities posed a threat to worker health and safety, it could have taken measures to protect their health.  For example, workers encountering asbestos could be provided with face masks, respirators, or other personal protective equipment, or simply kept out of areas with a perceived danger, among other options.  Of course, it also remains undisputed that there was never a single air sample taken in those facilities that showed asbestos to be above the applicable limits.  As the HIANG stated in a letter to the USAF in 1990, in its estimation, "there was no immediate health hazard from airborne asbestos." Opp. Brief at 16.  Plaintiffs' discussion of events **after** Mr. Byington stopped working at the HIANG (Opp. Brief at 19-22) is utterly irrelevant.  Nevertheless, the selected excerpts in Plaintiffs' brief show only that the HIANG and USAF continued a dialogue about how best to manage asbestos, especially in light of the need to maintain use of the facilities, available funding, and other considerations.

The bottom line is that the license arrangement between the USAF and the HIANG plainly left all worker safety responsibilities to the HIANG, and the consultations regarding

how to handle potential asbestos problems did not change that total delegation of those responsibilities.

III. PLAINTIFFS RELY ON INAPPOSITE OR OUTDATED AUTHORITY, AND FAILS TO ADDRESS CONTROLLING SUPREME COURT PRECEDENT.

As explained supra, Plaintiffs' opposition to the United States' motion is based upon assertions that have no basis in the undisputed facts: The record demonstrates that the USAF was entitled to leave all safety responsibility to its licensee (the HIANG), and even if the consultative activity of the USAF had amounted to retained authority (which it did not), the alleged acts or omissions were not constrained by any specific and mandatory self-imposed obligations and the recommendations made by the USAF were rooted in considerations of public policy. Thus, even if the USAF were acting as the ultimate decision-maker as to how to deal with asbestos in the buildings licensed to the HIANG, judgments about whether to remove the asbestos, to encapsulate the asbestos, or to monitor dust levels without engaging in removal or encapsulation so long as the dust levels remained below accepted levels, were grounded in policy. These sorts of cost-effectiveness decisions are plainly the sorts of decisions that the Supreme Court has instructed are not to be second-guessed in tort suits.

Plaintiffs' reliance (Opp. Brief at 2-5) on In Re Glacier Bay United Cook Inlet Drift Assoc. v. United States, 71 F.3d 1447 (9th Cir. 1995), is simply inapposite. First, the language in that case rejecting the idea that "the guidelines [in that case] might not be binding for purposes of the discretionary function

12

inquiry," is inapposite here because, even if the USAF had not left all responsibility to the HIANG, the cited guidelines here were explicitly **"optional."**  To the extent Glacier Bay is relevant at all, it supports the government's argument here: The panel there, in reviewing government regulations for the presence of a mandatory and specific requirement, stated that "sections that use only the suggestive 'should,' not the mandatory 'shall,'" leave discretion to the government actor.  Id. at 1453.  The regulations at issue in Glacier Bay required this close parsing of terms, since the regulations did not contain the explicit caveat (present in the case at bar) that AFR 91-42 provided only "optional guidance."

   Moreover, here, unlike in Glacier Bay and similar cases, the challenged decisions – how to respond to the presence of asbestos-containing material in the HIANG-controlled buildings – were **not** governed by objective scientific standards, as to which no policy-based judgments could be made.  The point in Glacier Bay was that the alleged errors were negligent mistakes that had nothing to do with policy considerations.  In contrast, a review of the documents in this case makes it abundantly clear that there were a variety of possible responses that could be taken, not just the one urged by Plaintiffs, and that the approach taken by the HIANG did involve the weighing of policy considerations, for decisions about how to proceed implicated the weighing of perceived risks against priorities in utilizing limited resources, and interference with the core mission of the HIANG.

Here, the Supreme Court's statement in Gaubert, 499 U.S. at 331, provides the necessary framework within which to decide whether a particular act or omission is within the discretionary function exception: "It may be that certain decisions resting on mathematical calculations, for example, involve no choice or judgment in carrying out the calculations," but decisions involving the balancing of policy considerations are immune from suit under the Federal Tort Claims Act.

Nor does ARA Leisure Services v. United States, 831 F.2d 193, 195 (9th Cir. 1987), advance Plaintiffs' argument (Opp. Brief at 5), because there the failure to maintain road in safe condition was a departure from specific National Park Service standards, which required graded roads to conform to the original grade and alignment. That failure to conform with specific self-imposed standards deprived the government of the ability to invoke the discretionary function exception. Here, in contrast, the HIANG – not the USAF – had responsibility for safety **and** there was no specific and mandatory approach that had to be taken with respect to asbestos in the buildings.

Plaintiffs also rely on McGarry v. United States, 549 F.2d 587 (9th Cir. 1977), for the proposition that, in some instances, the government may be held liable for injury to its contractor's employee on a premises liability theory. Opp. Brief at 22-23. It is undoubtedly true that **if**, in a given case, the discretionary function exception does not apply, then a premises liability theory may be pursued. But, as noted in our opening

14

brief (U.S. Brief at 12 n.5), theories of negligence are irrelevant to the threshold jurisdictional issue of whether the discretionary function exception bars a case.

In McGarry, the Ninth Circuit affirmed a Nevada district court's finding that the AEC was subject to a claim for negligence where it had chosen to retain some responsibility over matters of contractor employee safety, including the right to inspect and stop work, but had utterly failed to discharge its oversight responsibilities. McGarry, 549 F.2d at 591. Significantly, the district court in McGarry had found that the "AEC did **nothing** to ascertain whether [its contractor] was fulfilling its contractual obligations to safely provide for the workers." Id. at 590 (emphasis added). However, unlike the facts in the instant case, where the USAF expressly disavowed any duty to oversee the health and safety of the HIANG's employees, four of the government employees at the Nevada Test Site had positions "whose duties were primarily concerned with safety," and "whose function was to appraise a contractor's performance relating to safety practices." Id. at 588, 590. Because the AEC had decided to retain some safety responsibilities by having four of its own employees stationed on-site to handle safety issues, the McGarry court (using the planning vs. operational distinction later rejected by the Supreme Court in Gaubert, 499 U.S. at 325-

15

26), held that the AEC employees' failure to enforce safety procedures was operational and therefore non-discretionary.[3]

Here, in contrast, the government did not have USAF employees on-site at the HIANG facilities to monitor worker health and safety nor did it retain oversight authority over those state workers. Any continued vitality of McGarry, in light of subsequent Supreme Court pronouncements on the exception (see supra, p. 12 & n.3) derives from the finding that there was no policy implicated because the government **had utterly and completely ignored and abandoned its retained oversight responsibility**. The panel found that such total abdication of its responsibilities under the contract could not have been a policy decision, but rather constituted nonfeasance in contravention of the policy judgment implied in the contract. In contrast, the evidence in the case at bar establishes that the United States **did not** exercise any oversight responsibilities for the HIANG employees. In such circumstances, the law is clear that the discretionary function exception precludes FTCA suits. See U.S. Brief at 15-18. Thus, McGarry is distinguishable on the facts and does not foster the conclusion that the discretionary function exception is inapplicable to this case.

Plaintiffs' attempt (Opp. Brief at 25-26) to distinguish Tyni v. United States, No. 99-00907 HG-KSC, dated November 7,

---

[3] McGarry was decided before the key Supreme Court cases interpreting the discretionary function exception. See Gaubert v. United States, 499 U.S. 315 (1991); Berkovitz v. United States, 486 U.S. 531 (1988); United States v. S.A. de Viacao Area Rio Grandese (Varig Airlines), 467 U.S. 797 (1984).

2001, (See U.S. Brief at 14 and 18, Ex. H) is unavailing. Tyni was cited for the proposition that where, as in this case, there is an agreement between the government and plaintiff's employer to allocate responsibility for health and safety to the employer, with no retained responsibilities for the government, the government is insulated from suit by the discretionary function exception. As Tyni held, the decision to so allocate safety matters, where that allocation is not proscribed by a mandatory and specific requirement, is a matter of protected policy. U.S. Ex. H at 22-26.

   Finally, Plaintiffs' argument that the HIANG had no "special expertise" in asbestos safety, thus leaving the USAF as the only entity that could possibly have acted to protect the HIANG workers (Opp. Brief at 25), is utter nonsense. The facts show that the HIANG had civil engineers, environmental experts, asbestos program officers and contractors, all of whom were trained and heavily involved in making informed decisions about how best to accomplish the HIANG's mission, while maintaining a safe workplace. See Opp. Brief. Ex. C.

//
//
//
//
//
//
//

CONCLUSION

For these reasons, and those set forth in our opening brief, this Court should grant the United States' motion to dismiss, or in the alternative, grant summary judgment.

DATED: December 15, 2006 at Honolulu, Hawaii.

>PETER D. KEISLER
>Assistant Attorney General
>
>EDWARD H. KUBO, JR.
>United States Attorney
>
>C. FREDERICK BECKNER, III
>Deputy Assistant Attorney General
>Civil Division
>
>J. PATRICK GLYNN
>Director, Torts Branch
>
>DAVID S. FISHBACK,
>Assistant Director
>Environmental Torts Section
>Civil Division
>
>
>/S/ R. MICHAEL BURKE for
>_____
>STEVEN TALSON
>Senior Trial Counsel
>TIMOTHY B. WALTHALL
>Trial Attorney
>Environmental Torts
>Civil Division
>U.S. Department of Justice
>P.O. Box 340
>Washington, D.C. 20044
>Telephone: (202) 616-4229
>Facsimile: (202) 616-4473
>Attorneys for Defendant,
>United States of America

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

L. Richard DeRobertis   rd@gogaliher.com
December 15, 2006

Jeffrey T. Ono   jto@gogaliher.com
December 15, 2006


Served by First-Class Mail:

Gary O. Galiher, Esq.                    December 15, 2006
610 Ward Avenue
Second Floor
Honolulu, Hawaii 96814


DATED: December 15, 2006, at Honolulu, Hawaii.

                          EDWARD H. KUBO, JR.
                          United States Attorney
                          District of Hawaii


                          /s/ R. Michael Burke
                          _____
                          R. MICHAEL BURKE
                          Assistant U.S. Attorney